# ELIZABETH PERKINS v. JOHN CENTER, JOHN COCHRAN, AND ROBERT G. PERKINS.

<div style="float:right">| 35 | 713 |<br>| 82 | 321 |</div>

REDEMPTION OF LAND—REDEMPTIONER—FRAUD, AND EFFECT. OF.—A mortgage was executed by the husband upon certain real property situated in the City and County of San Francisco, being the community property of the husband and wife, who were thereafter divorced from the bonds of matrimony, and one half the community property was awarded to the wife by the decree of said divorce. Thereafter the mortgage was duly foreclosed, and thereunder the mortgaged property sold to R.; from which sale a redemption was made by S., by the procurement of the husband and one C., the husband having for that purpose fraudulently confessed a judgment in favor of S., without being indebted to him, and C. furnished the money with which said redemption was made. Subsequently, the wife procured a redemption to be made from S., through F., to whom, for that purpose, she made an assignment of her judgment for costs and alimony, rendered in the divorce suit, which had been rendered in another county, but without docketing said judgment in the City and County of San Francisco. Subsequently, one Cochran, as the secret agent of the husband and C., and who had full knowledge of the foregoing facts, and to whom C. had furnished money to purchase another mortgage debt upon said property which had been contracted by the husband after the granting of said decree of divorce, redeemed from F. Said first and third redemptions were procured by the husband and C. to be made for the fraudulent purpose of divesting the wife of her interest in said property, of which

fact, and the particular means of its intended accomplishment, the wife was ignorant during said periods. *Held,* first, that in equity the redemption by S. was a redemption by the husband, and extinguished the lien of said mortgage; second, that the redemption by F. was nugatory, because of the failure to docket said judgment in the City and County of San Francisco; third, that although Cochran was a legal redemptioner—he having become the legal holder of a mortgage which was a valid incumbrance upon the husband's moiety interest in said property—yet his redemption was likewise nugatory as to the wife, because of the said extinguishment of said first mortgage lien thereon, of which he had notice; and fourth, that, as the result of said transaction, the title of the wife to her one half of said property remained in her, freed of the lien of said first mortgage, subject only to a contribution to be made by her as a tenant in common of said property with the husband, after said decree of divorce, for one half the expense of said redemption made by S.

IDEM—RECISION OF SALE OF LAND FOR FRAUD AND INADEQUACY OF CONSIDERA-
   TION.—In such case, after the foreclosure of the mortgage to H., and the sale of the property thereunder to R., and whilst it was subject to redemption, the wife, by her quitclaim deed, conveyed all her interest in it to S. for an inadequate consideration, and immediately thereafter S. conveyed it to C., who furnished the money which was paid to the wife: *Held,* that at the date of her deed the wife had sufficient notice of the prior transactions to put her upon inquiry, and is not entitled to rescind the contract of sale.

PLEADING IN EQUITY ACTIONS.—In an action to set aside, as fraudulent, a conveyance of land, so much of the complaint as sets out in detail the inceptive steps which culminated in the alleged fraudulent conveyance, is not irrelevant or redundant matter.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

This was an action brought to set aside certain conveyances as fraudulent, and to place the plaintiff in possession of certain portions of the lands so conveyed and remaining in the hands of the grantees unsold, and for an account of all sales, and a decree for the payment to the plaintiff of her share of the proceeds.

The Court, upon motion of the defendants, struck out, as irrelevant and redundant, divers large portions of the plaintiff's complaint, to which the plaintiff duly excepted. To the complaint, as thus emasculated, the Court sustained a demurrer, interposed on the ground that it did not state facts sufficient to constitute a cause of action; whereupon,

the plaintiff declining to amend, judgment passed for the defendants, and the plaintiff appealed.

The other facts are stated in the opinion of the Court.

*Asher B. Bates*, for Appellant.

*S. M. Wilson*, and *A. P. Crittenden*, for Respondents.

By the Court, CROCKETT, J.:

There are but two grounds of error alleged in this appeal, to wit: first, that the Court erred in striking out, as irrelevant and redundant, certain portions of the complaint; and second, that the Court erred in sustaining the defendants' demurrer to the complaint.

We shall first consider the ruling on the demurrer; and in discussing this point, shall consider whether or not the complaint, in case no part of it had been striken out, presents a valid cause of action. If this point be decided against the plaintiff, it will be unnecessary to decide the other.

The plaintiff was formerly the wife of Robert G. Perkins, one of the defendants, but separated from him in the year 1855, since which period they have not lived together or cohabited as man and wife. Prior to this time, the defendant Perkins had acquired, during the marriage, valuable real estate in the City of San Francisco, which became common property of the marriage. In the year 1854 the defendant Perkins borrowed of Thomas J. Henly five hundred dollars at a high rate of interest, and made a mortgage to the latter on a portion of the common property, to secure the debt. It is not claimed that this was not an honest debt, and *bona fide* in its inception. The complaint avers that in September, 1860, the defendant Perkins, in contemplation of proceedings which he was then about to institute against the plaintiff for a divorce, entered into a fraudulent conspiracy with the defendant Center to deprive her of her share of the common

property, and in furtherance of this fraudulent design, executed and delivered to Center an absolute deed for the whole property, reciting a consideration of seventy-five thousand dollars; that Center, at the same time, executed and delivered to Perkins his promissory notes for seventy-three thousand dollars, and paid him two thousand dollars in cash; also, made an absolute deed reconveying the entire property to Perkins; but it was agreed between them, as a part of the transaction, that the promissory notes and the deed from Center to Perkins should be deposited in the safe of Alsop & Co., there to remain, subject only to the joint order of Center and Perkins; that the two thousand dollars in cash was immediately refunded by Perkins to Center; that Center entered into the possession of the entire property, and the deed made to him by Perkins was recorded on the day of its date; that within a few days thereafter Perkins commenced the suit for divorce, in which a cross complaint was filed by the present plaintiff, alleging that *she* was entitled to a divorce, and praying that the application of Perkins be denied, and that hers be granted, and praying also for her share of the common property, but not stating specifically of what the common property consisted; that on the 30th of November, 1860, she filed a notice of *lis pendens*, referring to her claim to the common property under the cross complaint; that on the 3d of December, 1860, a decree was entered divorcing her from Perkins and awarding her one half of the common property, describing it only, in general terms, as "all of the property belonging to or in which the said Robert G. Perkins had any legal or equitable interest," and awarding to her, also, costs and alimony; that within a few days after this decree was entered, Henly commenced an action to foreclose his mortgage, and in February, 1861, obtained a decree of foreclosure for about five thousand dollars, upon which an order of sale issued, under which the property was sold to R. A. Redman, on the 5th of June, 1861; and it is not denied that Redman was an honest, *bona fide* purchaser; that there was an understanding between Henly and Perkins that the

mortgage debt was not to be paid until, by the accumulation
of interest, it had grown to be so large a sum as to render it
probable that the plaintiff would be unable to redeem the
property; and it was further agreed that in the event of a
redemption, Henly was to retain only the five hundred dol-
lars originally loaned, and the surplus was to be divided
between Henly and Perkins, of all which Center was cogni-
zant; that in order the more effectually to accomplish their
fraudulent designs, Center procured Perkins, in August,
1861, to confess a judgment in favor of one Smith for about
one thousand dollars, although Perkins was in no manner
indebted to Smith; that, claiming to be a judgment creditor,
Smith redeemed the property from the sale to Redman, on
the 4th of December, 1861; that Center furnished the money,
and Smith was only the secret agent of Center in the trans-
action; that thereupon the plaintiff assigned to her attorney,
Freelon, her judgment against Perkins for costs and alimony,
and on the 6th of December, 1861, Freelon, as such assignee,
redeemed said mortgaged premises from Smith; that on the
23d of July, 1861, Perkins made another mortgage on a por-
tion of the same premises to one Conroy, to secure a debt
due from Perkins; and in furtherance of the fraudulent plans
of the defendants, Center furnished to one Cochran the
money with which to purchase the mortgage to Conroy, on
obtaining an assignment of which, Cochran, on the 13th of
December, 1861, redeemed said mortgaged premises from
Freelon; "that the said John Center, having fraudulently
colluded, as aforesaid, with the said Robert G. Perkins, to
deprive the plaintiff of her rights in the property of said
Robert G. Perkins, fraudulently concealing from the plaintiff
her rights aforesaid, and taking advantage of the pretended
deed from the said Robert G. Perkins to himself, and of the
pretended redemptions aforesaid, and thereby inducing the
plaintiff to believe that she had no rights to the premises,
caused one Alexander Scott, on his behalf and as his agent,
to negotiate with the plaintiff and her attorney, T. W. Free-
lon, Esq., for the purchase of all claims made by her in the

premises; and by means of his fraudulent pretensions afore-
said, induced the plaintiff to sell and convey to the said
Alexander Scott, for the sum of five thousand dollars, her
interest in the following premises, part of the property of
the said Robert G. Perkins, to wit: '' (here follows a descrip-
tion of the premises conveyed;) that the premises so con-
veyed then were and are now of the value of one hundred
thousand dollars; that Scott acted only as the agent of
Center in this transaction; that Center furnished the money,
and after taking the deed from the plaintiff, Scott, on the
29th of November, 1861, conveyed the premises to Center;
that to complete his fraudulent designs, Center induced and
persuaded the said Robert G. Perkins not to make any
redemption of the property sold under the foreclosure until
after the time for redeeming it from Cochran had expired,
by assuring Perkins that he would not be prejudiced or
injured by allowing the time for redemption to expire; that
his rights in the property were not in any danger; and as
soon as the time for redemption had expired, Center repre-
sented to Perkins that Cochran had acquired the title by the
failure of Perkins to redeem, and by such representations
induced Perkins to release and abandon, for the sum of
fifteen hundred dollars, all his right in the premises to
Cochran, for the joint benefit of Center and Cochran; that
Cochran well knew that Center and Perkins were colluding
to deprive her of her legal right, by means of the deed from
Perkins to Center, and that Perkins had been prevented
from setting up any claim under the deed from Center,
which he had concealed and not placed on record, and from
redeeming the property from Cochran, by the declarations
and acts of Center; that Cochran did not procure the Sheriff's
deed under the foreclosure sale, but pretending to be entitled
thereto, negotiated with Perkins, through Center, to induce
him to produce and put on record the deed from Perkins to
Center, and to convey to Cochran the interest of Perkins in
and to the entire property; that by these means Perkins was
induced to execute and deliver such a deed to Cochran, on

the 17th of July, 1862; that in pursuance of a previous arrangement, Cochran has since conveyed portions of the property to Center; and that Cochran had full notice of all the fraudulent acts of Center and Perkins in the premises.

The complaint then avers that the plaintiff "was ignorant of and unable to acquire any information in relation to the alleged fraudulent actings and doings of the parties defendant in this suit, or of the other persons who are alleged to have participated in the same at the time when they were committed and for a long time thereafter, and that they were carefully and intentionally concealed from her, and the same have come to her knowledge and been discovered and made known to her within the last two years, and not before; and that up to the time of such discovery she was entirely unable to ascertain and know that the said parties defendant had been guilty of the alleged fraudulent actings and doings."

The complaint was filed July 19th, 1865.

It is not alleged or claimed that the mortgage to Henly was not, in all respects, a valid lien on the property which it included. The proceedings to foreclose it were not commenced until after Perkins and his wife had been divorced; and there is no averment that the foreclosure was not, in all particulars, regular and valid; nor is it pretended that Redman, the purchaser at the foreclosure sale, would not have acquired a complete and valid title if the property had not been redeemed. In that event, it is plain the plaintiff would thereafter have had no title, legal or equitable, to the mortgaged premises. Did the redemption by Smith change the plaintiff's *status*, or confer upon her any new rights, or preserve for her any subsisting rights which she would otherwise have lost by reason of the sale to Redman? The argument of counsel is, that if Perkins had redeemed, the incumbrance of the mortgage would simply have been removed, and the title have remained as if the mortgage upon the premises had not been made; and that owing to the fraudulent collusion between Center and Perkins, the

redemption by Smith is in fact only a redemption by *Perkins*, and should be so treated in a Court of equity.

It is obvious that if Perkins had redeemed from Redman, the effect would have been simply to remove the incumbrance of the mortgage from the common property; in which event the right of Mrs. Perkins to her share of it must have been subject only to contribution for her share of the redemption money. For, though Perkins was under no legal obligation to redeem for the protection of the common property, yet if he had in fact voluntarily redeemed, in his own name, the redemption would have inured to her benefit in proportion to her interest in the property, subject to her liability to contribute her share of the cost of redemption. If the property of tenants in common be sold under execution, neither tenant is under a legal obligation to the others to redeem; but if either does in fact redeem, it inures to the benefit of all, subject to contribution from each for his share of the redemption money. After the divorce the plaintiff and Perkins were only tenants in common of the common property, subject to the incumbrances upon it.

It becomes material, therefore, to inquire whether, on the facts alleged in the complaint, the redemption *by Smith* is to be deemed in equity a redemption *by Perkins*. If it be true, as alleged, that in view of a suit for divorce by Perkins, he and Center entered into a fraudulent conspiracy to defraud the wife out of her share of the common property; that the plan agreed upon was a conveyance of the whole property from Perkins to Center, by deed of bargain and sale, reciting a consideration of seventy-five thousand dollars, which deed was to be immediately recorded; that in fact no money was paid except two thousand dollars, which was immediately returned to Center; that to give a colorable fairness to the transaction, Center executed and delivered his promissory notes for seventy-three thousand dollars, and at the same time executed and delivered to Perkins an absolute deed reconveying the entire property, but with an agreement that this deed and the notes were not to be under the contro

of Perkins, and were to be deposited in the safe of Alsop & Co., from which they could not be withdrawn except with the consent of Center; that afterwards the notes were delivered up to Center, and the deed to Perkins, without any new consideration; that in furtherance of the fraudulent conspiracy, Perkins confessed a sham judgment to Smith, for the mere purpose of enabling him to become a redemptioner in form; that in order to carry out their fraudulent design, Center furnished Smith with the money to effect the redemption from Redman. And if it be further true, as alleged, "that in making the redemption aforesaid, the said Smith acted for and in behalf of the said Robert G. Perkins and the said John Center," we have no hesitation in deciding that a Court of equity will treat the transaction as a redemption by Perkins. It would be a reproach to the administration of justice if such transactions were beyond the reach of a Court of equity, whose peculiar province it is to strip off the flimsy disguises in which fraudulent actions are so often clothed, and to regard the substance, rather than the form. If the facts alleged are true, the redemption was in fact made for Perkins, though in the name of Smith. Nor is it material that Center furnished the money and was to participate in the benefits of the redemption. Center had no right to redeem; but Perkins, the judgment debtor, had the right; and if Perkins and Center, in order to avoid the effect of a redemption by Perkins in his own name, hit upon the expedient of a sham judgment to Smith, with a view to create a redemptioner who might defy the plaintiff, Center can derive no advantage from the fact that he furnished the money to carry out a scheme by which Smith was made to appear to be a valid redemptioner, whilst the fruits of the redemption were to inure to Center and Perkins. He stands in no better position than if he had loaned the money to Perkins to effect a redemption in his own name, on an agreement that he was to participate in the profits.

Treating the redemption by Smith in the same light as if

91

it had been made by Perkins in his own name, it follows that at that point of time the plaintiff was entitled to one half of the property redeemed, subject to her liability to contribute one half of the cost of redemption. It remains to be considered how the plaintiff's rights were affected by the subsequent redemptions.

The plaintiff, it appears, redeemed from Smith, not in her capacity of owner, but as a judgment creditor of Perkins, under the judgment against him for costs and alimony in the action for divorce. It appears to be conceded by counsel on both sides that she was not a valid redemptioner. Her judgment was recovered in Alameda County, and it does not appear that any transcript of the judgment was filed in the City and County of San Francisco. Without this, she acquired no lien on the land, and unless her judgment was a lien, she was not a redemptioner. (Prac. Act, Sec. 230.)

Her attempt to redeem was, therefore, a nullity so far as it purported to operate as a transfer of title. But in her attempted redemption she refunded to Center, through his agent Smith, the money advanced by Center. At this stage of the proceeding her *status* towards the land remained as before she attempted to redeem, her effort to redeem being nugatory.

But treating her redemption as valid, Cochran attempted to redeem from the plaintiff, and in fact paid to her the amount required to redeem. But if she was not a valid redemptioner, and had acquired no title by her attempted redemption, it is plain that Cochran could acquire none through her, in her capacity of redemptioner. It appears, however, that Smith redeemed on the 4th of December, and within two days thereafter the plaintiff redeemed or attempted to redeem from Smith; and on the thirteenth day of the same month Cochran redeemed from the plaintiff. Under these circumstances, if there were no other objections to the redemption of Cochran, a Court of equity would treat him as a redemptioner directly from Smith. The futile effort of the plaintiff to redeem intermediately between Smith and

Cochran, would not prejudice the rights of the latter. Smith having received from the plaintiff all that he was entitled to on a redemption, and Cochran having refunded this amount to the plaintiff, no wrong would be done to any one by treating Cochran as a redemptioner directly from Smith.

It follows that if Cochran had the proper legal *status* of a redemptioner, and was not tainted with the frauds imputed to Center, Perkins, and Smith, his redemption was valid. The mortgage from Perkins to Conroy, which was assigned to Cochran, and by virtue of which he claimed the right to redeem, has not been assailed. But in opposition to his redemption, and to the title acquired under it, the plaintiff alleges: 1st. That the mortgage to Conroy was made after the filing of the notice of *lis pendens* by the plaintiff, and that her title could not be prejudiced by any subsequent act of Perkins. 2d. That Center furnished the money with which Cochran purchased the mortgage, and that Perkins and Center procured Cochran to purchase it. 3d. That Cochran had notice of the fraudulent acts of Center and Perkins, and is tainted with the fraud; but it is not alleged that Center or Perkins advanced the money paid by Cochran on the redemption by him.

We do not perceive the force of the first proposition. The pendency of the action for divorce did not hinder Perkins from making a valid mortgage to Conroy, on his own interest in the property. The mortgage, therefore, created a valid lien—at all events, on the interest of Perkins—and this was all that was needed to make the holder of the mortgage a valid redemptioner.

Nor is there any greater force in the second point, to wit: that Center furnished the money to purchase the mortgage, and procured Cochran to take an assignment of it. The mortgage being a valid lien on the property, Center or any one else had the right to purchase it, and to make it the basis of redemption from a prior execution sale of the mort-

gaged premises. There was no fraud in this, and nothing of which the plaintiff can complain.

The third point, to wit: that Cochran had notice of the frauds imputed to Perkins and Center, deserves more consideration. If he had notice that the judgment in favor of Smith was a sham, contrived only as a fraudulent device to make it appear that Smith was a valid redemptioner; that Center furnished Smith the money to redeem, and that Smith's redemption was, in fact, a redemption by Perkins; and if he had notice that all this was done to mislead the plaintiff and to defraud her out of her interest in the property, his rights acquired by his redemption would clearly be chargeable with the plaintiff's equities. If he had notice that Perkins was the real redemptioner from Redman, though in Smith's name, he was bound as a matter of law to know that no subsequent redemption made by him could deprive the plaintiff of the benefits resulting from the first redemption. The rights which he acquired with such notice were subject to the plaintiff's equities.

We proceed now to inquire into the effect of the deed from the plaintiff to Scott, which is sought to be set aside for fraud. It is not averred that either Center, Perkins, or Scott made any false representations in words to the plaintiff to induce her to execute the deed. The deed was made before there had been any redemption of the property from Redman, but after the sale to him. The allegation is, in substance, that Scott was only the agent for Center in the transaction; that Center furnished the money, and after obtaining the plaintiff's deed, Scott conveyed the property to Center, without receiving any consideration therefor. The allegation of fraud is, that Center and Perkins having fraudulently colluded to deprive her of her interest in the property, Center fraudulently concealed from her her rights, and "taking advantage of the pretended deed from the said Robert G. Perkins to himself, and of the pretended redemption aforesaid, and thereby inducing the plaintiff to believe that she had no rights to the premises," caused Scott to negotiate for and

obtain her deed for an inadequate consideration; and that Center, "by means of his fraudulent pretensions aforesaid, induced the plaintiff to sell and convey to the said Alexander Scott, for the sum of five thousand dollars, her interest in the following premises, part of the property of the said Robert G. Perkins:  *  *  *  that the premises so released and conveyed by the plaintiff then were and now are of great value, to wit: of the value of one hundred thousand dollars or thereabouts; that when the plaintiff made and executed her conveyance thereof as aforesaid, she was induced to believe by the acts and doings aforesaid and did believe that the conveyance made as aforesaid by the said Robert G. Perkins to the said John Center was made for a valuable consideration."

These averments are not sufficient to entitle the plaintiff to a rescission of the contract of sale. There were no relations of trust or confidence between Center and the plaintiff which rendered it incumbent on him to inform her of her rights, and it is not averred that he made any false representations to her. The deed from Scott to Center had been of record for more than a year, during which time she had a full opportunity to investigate the transaction; and at the time when she conveyed to Scott the whole property included in the mortgage to Henly had been sold to Redman, and was subject to redemption. If she had not the right to redeem as a joint owner of the common property, she might have become a redemptioner under her judgment against Perkins, by recording her judgment in the proper county. The fact that Scott or any one else offered five thousand dollars for her interest in a portion of the tract conveyed by Perkins to Center, in the face of that deed purporting to be an absolute conveyance, made by Perkins before the suit for divorce, was sufficient to put her upon inquiry. If that deed was valid, she had no title to convey; and the fact that notwithstanding the foreclosure sale, and the deed from Perkins to Center, an apparent stranger to the transaction offered to pay the large sum of five thousand dollars for her

assumed interest in a portion of the tract, was of itself suffi-cient to awaken inquiry and put her upon her guard. The complaint exhibits no sufficient grounds for rescinding the contract of sale. (*Board of Commissioners of San José* v. *Younger,* 29 Cal. 172.)

We think the Court committed error in striking out por-tions of the complaint as irrelevant and redundant. That portion included between folios twelve and twenty-one of the printed transcript, was properly stricken out. It consists of a minute history of the method by which Perkins acquired the title, and embodies literal copies of documents which are out of place in a pleading. But that portion included between folios twenty-one and thirty-one, gives a history of the alleged fraudulent conveyance from Perkins to Center, and of the deed from Center to Perkins, and avers that it was a part of the fraudulent scheme to mislead the plaintiff as to the true state of the title. If the allegations of the complaint are true, this was the inceptive step in the fraud, which culminated in the sham judgment in favor of Smith, and the redemption by him for the benefit of Perkins. We hold that if Cochran redeemed, with a knowledge of these fraudulent proceedings, he took the title acquired by his redemption charged with the plaintiff's equities. In detail-ing the history of the judgment in favor of Smith, and the redemption by him, it was not irrelevant or redundant to state the entire transaction from its inception, showing how the fraud originated, how it progressed, and that it resulted in the sham judgment, and a redemption by Smith for the secret benefit of Perkins, or Perkins and Center. The Court, therefore, erred in striking out this portion of the complaint.

In respect to the deed from Perkins to Cochran, made in 1862, and which is alleged to have been fraudulently obtained, it is sufficient to say that Perkins is not here to complain of the transaction; and, inasmuch as the deed could convey only his own interest in the property, it is plain no injury has resulted to the plaintiff therefrom.

Judgment reversed, with an order to the District Court to overrule the demurrer, with leave to answer; but so much of the order striking out portions of the complaint is affirmed as relates to that part of the complaint reciting in detail the manner in which Perkins acquired his title; and said order is reversed in respect to the remaining portions of the complaint which were ordered to be stricken out.

Mr. Chief Justice SAWYER and Mr. Justice SPRAGUE expressed no opinion.