[S. F. No. 15958. Department Two.—March 28, 1941.]

LENA GROLEMUND, Appellant, v. EMILIO CAFFE-
RATA et al., Respondents.

Thomas D. Aitken for Appellant.

Eugene H. O'Donnell, Julien R. Bauer and Albert A. Axelrod, as *Amici Curiae,* on Behalf of Appellant.

Ernest I. Spiegl for Respondents.

CURTIS, J.—Lena Grolemund and Caesaer Grolemund, her husband, instituted this action against Emilio Cafferata and the respective sheriffs of the city and county of San Francisco and the county of San Mateo, for the purpose of procuring a permanent injunction restraining defendants from proceeding with the sale of certain personal property in San Francisco and certain real property in San Mateo County pursuant to executions issued on a judgment in favor of defendant Emilio Cafferata and others, as plaintiffs, and against plaintiff Caesaer Grolemund, as defendant. From a final judgment in favor of defendants, plaintiff Lena Grolemund appeals.

The parties are in substantial agreement as to the facts forming the basis of this action and the significance of their chronological order, which we shall here detail: In 1926 plaintiffs acquired the leasehold interest and furniture of a 38 room rooming-house in San Francisco. Payment was made from funds which they had jointly accumulated, earnings of the husband commingled with separate funds of the wife. As various pieces of furniture therein became outworn and useless over the years, they were replaced with new furniture bought some time after the year 1927 with money received from operation of the rooming-house. In 1930 plaintiffs bought with commingled funds certain real property in the county of San Mateo.

On April 17, 1935, Emilio Cafferata and others recovered a judgment in an action prosecuted in the Superior Court of San Francisco against Caesaer Grolemund because of damages sustained on August 6, 1933, in an automobile collision, wherein the defendant was adjudged negligent in the operation of his car. In accordance with executions issued by the trial court on April 18, 1935, for the satisfaction of this judgment, levies were made by the respective sheriffs of the city and county of San Francisco and of San Mateo County on the above-mentioned property of plaintiffs in these counties. On May 31, 1935, third party claims as to each of these properties were filed with the respective sheriffs, Lena Grolemund asserting ownership of the San Francisco personal property and one Herman Weibel asserting ownership of the realty in San Mateo County by virtue of a deed executed in his favor by plaintiffs, who received no consideration therefor. After hearing on a petition to determine title on June 13, 1935, the trial court in the above-mentioned tort action made its order declaring this real and personal property to be community property of Caesaer Grolemund, the judgment debtor, and Lena Grolemund, his wife.

On July 2, 1935, plaintiffs filed in the present proceeding their first amended complaint, wherein, as basis for issuance of the desired injunction, appeared the following allegations: that this real and personal property was acquired by them subsequent to the year 1927 and their community ownership of it was declared by the court order of June 13, 1935; that the tort judgment was entered against Caesaer Grolemund alone; and that sheriff sales of these properties, held under

executions to satisfy this judgment, were impending. Thereupon, all proceedings in connection with the execution levies were stayed until sixty days after final disposition of the instant action. By their answer the defendants put in issue the character of the properties and the date of their acquisition. This action, being equitable in its nature, was tried by the court sitting without a jury, and resulted in a judgment in favor of defendants. From the findings of fact the court concluded that all of the plaintiffs' property involved herein was their community property, of which the personal property in San Francisco was acquired by the parties prior to 1927 and the real property in San Mateo County, having been purchased in 1930, had all the characteristics of community property acquired subsequent to 1927. Thereupon the court ordered the preliminary injunction dissolved and adjudged Emilio Cafferata entitled to levy execution upon the real and personal property described in plaintiffs' amended complaint and to continue with the sale of those properties, the proceeds to be applied upon the judgment against plaintiff Caesaer Grolemund.

The principal question to be decided on this appeal is whether community property may be subjected to the satisfaction of a judgment against the husband for his tort. Fundamental to our determination of this basic issue is consideration of the change wrought in our community system by enactment in 1927 of section 161a of the Civil Code. The general rule that community property in California acquired prior to 1927, has always been held liable for the husband's debts (Cal. Jur. Supp., vol. 3, p. 663, sec. 146) was given unqualified recognition by this court in the celebrated case of *Spreckels* v. *Spreckels,* 116 Cal. 339, 343 [48 Pac. 228, 58 Am. St. Rep. 170, 36 L. R. A. 497], wherein it is stated that the creditor of the husband could, at his option, sell under execution either the husband's separate property or the community property. The rule announced in that case has never been departed from by any decision of this court to which our attention has been called. Appellant claims, however, that by virtue of the enactment in 1927 of section 161a of the Civil Code, the wife now has a vested interest in the community property, of which she cannot be deprived because of the debt of the husband alone. Respondents resist this contention as contrary to the statutes and prior decisions of the

courts of this state. Because of the emphasis placed by the parties on this enactment as it reflects on the instant issue, we shall consider first its effect upon the property of the Grolemunds acquired subsequent to the enactment of said section 161a.

The evidence amply supports the trial court's conclusion that the real property in San Mateo County was acquired by the Grolemunds from commingled funds, "the source and amount of which cannot be ascertained" and "that said property being purchased in 1930, has all the characteristics of community property acquired subsequent to 1927''. As to the blending of separate and community property, the general rule is that the confusion of these, so that each is indistinguishable from the other, renders the mass community property for the reason that the separate owner is not able to establish his separate right to any article of the mass, nor prove his right to a computable share of it (McKay, Community Property, 2d ed., sec. 308, pp. 215, 216; Cal. Jur. Supp., vol. 3, p. 524, sec. 40), and the presumption in favor of community property applies so that it will all be community property (Civ. Code, sec. 164; Cal. Jur. Supp., vol. 3, p. 553, sec. 61). Since our analysis of the respective rights of the Grolemunds in this community real property must be governed by the law in force at the time of the acquisition in 1930, we shall refer briefly to relevant statutory provisions enacted prior to 1927, with which section 161a must be correlated.

 Section 172 of the Civil Code, while it does not specifically create a liability or an exemption for any particular type of community property, gives to the husband "the management and control of the community personal property, with like absolute power of disposition, other than testamentary, as he has of his separate estate". It reasonably follows from the express language above quoted that this section in effect subjects the entire community personalty (with the exception of the wife's earnings, Civ. Code, sec. 168) to any and all contracts of the husband, as well as to judgments arising out of his tort. Furthermore, since the only limitation upon the husband is to refrain from making a gift of such property without consideration, he is not prevented from paying it out in compromise or satisfaction of a

tort claim, for payment of a tort claim is not payment without consideration.

Section 172a of the Civil Code gives the husband "the management and control of the community real property," subject to the proviso that in regard to conveyances the wife must join with him in executing the necessary instruments. Since this restriction concerns only *voluntary* transfers, it has no application to the instant case involving the satisfaction of a judgment by levy of execution, so that for all practical purposes herein the husband's power of management and control of the community real property involved here is as absolute and complete as it is with respect to community personal property, as outlined in section 172. That the addition in 1927 of section 161a, defining the interests of the spouses in community property, did not change the rule vesting in the husband the entire management and control of the community property is manifest by the express recognition accorded sections 172 and 172a in the later statute. (Cal. Jur. Supp., vol. 3, p. 608, sec. 98; *Beemer* v. *Roher* (1934), 137 Cal. App. 293 [30 Pac. (2d) 547]; *Hannah* v. *Swift* (1932), 61 Fed. (2d) 307, 310.)

With reference to California legislation on the question of liability or exemption of property of the spouses for payment of obligations arising out of the husband's tort, the sole enactments are section 168, which exempts the wife's earnings (community property) from liability for debts of the husband, and section 171, which extends the same exemption in respect to the wife's separate property. It is significant to note that nothing is said in regard to the liability of the husband's separate property, the husband's earnings, or the balance of the community property (the wife's earnings excepted by Civ. Code, sec. 168) in regard to an obligation created by the husband's tort. From this silence of the legislature it logically can be inferred that it was thereby intended that the husband, as agent of the community, should retain the power to divest the parties of their community property by his own act in the same manner that he might divest himself of his separate property, so long as he did not make a gift of the former without consideration. To hold that the husband could not subject the community property to liability for his tort would be to hold that he could not manage and control the same. To illustrate, suppose that

the tort action had never been instituted by Emilio Cafferata and his co-plaintiffs, but that Caesaer Grolemund, after injuring these parties, had made a voluntary settlement of his liability. It cannot be said that the husband would be without power to use common funds to pay for the damages sustained by the injured persons because of his negligent act. Or let us suppose that the damage suit was brought and judgment had gone against Caesaer Grolemund, as here, but that no execution had been levied, it is obvious that the husband could satisfy such judgment voluntarily from a bank account under his control but which consisted of community funds. The foregoing analysis compels us to conclude that there is no logical distinction to be drawn between satisfaction of a judgment against the husband by levy of execution against the community property and satisfaction of a like judgment by the husband's voluntary payment from community funds. To hold otherwise would be to deny *in toto* the operation of sections 172 and 172a of the Civil Code, which would be contrary to the express terms of section 161a.

In this connection it should be noted that the legislature by section 167 of the Civil Code specifically exempted the community property from liability for the contracts of the wife made after marriage. This section does not settle the question of liability of the community property for the torts of the wife. However, by enactment in 1913 of section 171a of the Civil Code it was provided: "For civil injuries committed by a married woman, damages may be recovered from her alone, and her husband shall not be liable therefor, except in cases where he would be jointly liable with her if the marriage did not exist." This section was considered in *Smedberg* v. *Bevilockway* (1935), 7 Cal. App. (2d) 578 [46 Pac. (2d) 820], which appellant cites in support of her contention that the community property is exempt from liability for torts of either spouse, because by virtue of section 161a the husband and wife hold the title as an entirety.

In the Smedberg case a judgment for damages had been recovered against the wife for personal injuries sustained through her negligence and upon her subsequent voluntary bankruptcy, the trustee sued the husband to establish a lien upon her one-half interest in the community property. The District Court of Appeal held that such a lien could not be so impressed, reasoning that no authority therefor could be

found in the absence of a showing that she had a right to a present, separate and divisible interest in such property as the result (1) of a voluntary agreement executed between the spouses, or (2) of divorce proceedings in which a division of community property was sought and obtained by the wife. Careful examination of the opinion in that case reveals that the court did not decide the precise question of whether the community property was liable for the wife's torts, since the plaintiff there, trustee in bankruptcy, did not seek to impress a lien upon all the community property but only the wife's interest therein. Though the court in the Smedberg case did not discuss the effect of section 161a, it reasonably can be inferred from that decision that the District Court of Appeal was of the opinion that section 161a of the Civil Code does not change the nature of the wife's interest to a vested one so as to give her creditors the right of sequestration by attachment, execution or any other legal proceeding. Otherwise, her half of the community property would have been subjected to a lien by the trustee in bankruptcy, for not only has he under the Bankruptcy Act the right of the bankrupt, but also the rights of the judgment and other creditors (Bankruptcy Act, sec. 47 (a) (2); 36 Stat. (1910) 838, 840; Remington, Bankruptcy (1923), sec. 1552; *Noyes* v. *Bank of Italy* (1939), 206 Cal. 266 [274 Pac. 68]). Furthermore, by this decision, the husband's power and right of management and control are preserved, for the opinion points out that since neither the husband nor the wife had taken steps toward a partition of the community property, so as to free the wife's interest from the management and control of the husband, she has no power to deal with her interest in any way, hence no power to that end was available to the trustee in bankruptcy. For the foregoing reasons, it is manifest that there is nothing in the Smedberg case inconsistent with respondents' contention that the community property is responsible in its entirety for the separate debts of the husband, whose right to control and manage such property as provided in sections 172 and 172a of the Civil Code stands unimpaired by section 161a.

As lending additional support to their argument, respondents call attention to the enactment in 1931 of section 202 of the Probate Code, which provides, in part, that "community property passing from the control of the husband, either by

reason of his death or by virtue of testamentary disposition by the wife, is subject to his debts and to administration . . . '' This section is antagonistic to the construction appellant places on section 161a of the Civil Code, whereby she urges that the wife in 1927 was given a vested right in and to the community property, which no act of the husband could affect. Yet by section 202 of the Probate Code the legislature has made the entire community property subject to administration for the husband's debts, and from this premise respondents reason that if during life the husband may create an obligation which may be satisfied out of community funds after his death, it consistently should be said that that same obligation may be satisfied out of community funds during his life. The logic of this argument finds considerable support in a recent decision cited by respondents, *Sampson* v. *Welch* (1938), 23 Fed. Supp. 271, an action arising in the Federal Court for the Southern District of California on a matter of taxation, the question being whether certain portions of the community property belonged to the husband's estate or not. In its opinion, wherein it is clear from the lengthy discussion of the nature of the change which the adoption of section 161a effected in the wife's interest in community property in California, indicating that the court had this 1927 enactment emphatically brought before it, the following cogent language relative to the liability of the community property on administration of the husband's estate appears at page 281 of the opinion: ''Section 202 subjects all community property passing from the control of the husband by his death or otherwise to administration, to *his* debts, and to certain other charges. This is a provision more or less typical of the law in all community property states and *should be construed as correlative to the principle that during the husband's life the community property is subject to his debts*. Both are apparently corollaries to his right of management and control.'' (Italics ours.) To like effect, see *Estate of Haselbud*, 26 Cal. App. (2d) 375, 383 [79 Pac. (2d) 443]; Cal. Jur. Supp., vol. 3, pp. 688, 689, sec. 162. Thus, we have another illustration that the legislature did not intend by enactment of section 161a to alter the situation in regard to the husband's right of full management and control of the community property.

Appellant advances the argument that the statutes of Washington and the statutes of California regarding community property are the same, and, therefore, the rules announced in decisions of the Washington courts interpreting their code sections should be followed here. This contention is singularly devoid of merit in view of the fact that the underlying theories of the community system in the two states are entirely distinct. The Washington statutes are based on the theory of tenancy by entireties, with its fundamental concept of "community debts," and in that state the community property is not liable for the separate debts of the husband, much less of the wife, but is liable only for so-called "community debts". (Cal. Jur. Supp., vol. 3, p. 665, sec. 147, and cases there cited.) For example, in *Sun Life Assur. Co.* v. *Outler,* 172 Wash. 540 [20 Pac. (2d) 1110], the Washington court said at page 544: "The test of a community obligation is: 'Was the transaction carried on for the material benefit of the community?'" Thus, in Washington where the system makes the community property responsible only for "community debts" or "community liabilities," the community property cannot be reached for the individual tort of either the husband or wife. But in California there is no like concept of "community debts," though occasionally the courts in this state refer to such, overlooking the fact that the phrase is not appropriate to the California system (Cal. Jur. Supp., vol. 3, p. 666, sec. 147). A complete reading of all our code sections on community property clearly demonstrates that our community system is based upon the principle that all debts which are not specifically made the obligation of the wife are grouped together as the obligations of the husband and the community property (with the single exception of the wife's earnings, which are exempted from certain types of debt, Civ. Code, sec. 168). This proposition was confirmed in *Street* v. *Bertolone,* 193 Cal. 751, 753 [226 Pac. 913] : "The term 'the debts of the husband,' unless otherwise qualified, includes debts incurred by the husband for the benefit of the community as well as his own separate debts." Since in this state there is strictly no such thing as "community debts" in the sense in which they exist in Washington, the decisions of the latter state lose force as a precedent here.

It would serve no useful purpose to extend this opinion with prolonged discussion of the many income tax and in-

heritance tax authorities cited by appellant to uphold her theory. As example of these, we take occasion to make brief comment on the leading case of *United States* v. *Malcolm,* 282 U. S. 792 [51 Sup. Ct. 184, 75 L. Ed. 714], which expresses the prevailing view of the federal courts in its holding that the wife in California has such a present and vested interest in the community property that she may file a separate income tax return. We do not dispute the controlling effect of the rule announced in that decision on taxation questions involving like legal principles, but it has no bearing on the totally different situation presented here requiring determination of whether the wife's interest is such as will exclude the theory that the husband may manage and control, as well as create a liability against community property. (*Sampson* v. *Welch, supra*; *Hirsch* v. *United States,* 62 Fed. (2d) 128.)

Likewise, there is no merit in appellant's emphasis on the comparable operation of the homestead and community property laws. True, by the express language of our code, the most important exemption from execution is that of the homestead (Civ. Code, secs. 1240, 1241), but in the absence of such a specific limitation in the community property statutes, we fail to see the analogy advanced by appellant. The point is too clear for extended discussion.

Since it is our opinion that the enactment of section 161a of the Civil Code, defining the interests of the spouses in community property, has not altered the situation with respect to the wife's interest remaining subject to the husband's power of management and control, all community property, whether acquired prior to or subsequent to July 29, 1927 (the effective date of this statute), is liable for satisfaction of the husband's debts. As the date of acquisition is immaterial here, the preceding discussion applies with equal force to the personal property in San Francisco purchased by the Grolemunds in 1926 and eliminates any necessity for separate treatment of that phase of this proceeding.

Our conclusion in the instant case is not only in conformity with legal principles, but is consonant with practical considerations and public policy as well, for otherwise a person injured by the separate act of the husband would fail to gain redress for his damage in such case where the only property of the spouses is community. This obviously unfair and unjust result would have a disastrous effect on the very founda-

tion of our community system and would be entirely out of harmony with the general rule that the community property is liable for the husband's debts. The trial court properly held that respondents may proceed to levy execution upon both the community real and personal property of the Grolemunds, and sell the same in satisfaction of the tort judgment obtained against the husband alone.

The judgment appealed from is accordingly affirmed.

Traynor, J., and Shenk, J., concurred.

A petition for a hearing in Bank was denied April 25, 1941. Edmonds, J., and Carter, J., voted for a hearing.