**In re CUMMINGS.**

**No. 44715.**

United States District Court
S. D. California. Central Division.

May 10, 1949.

Grainger, Carver & Grainger and Oliver & Corfman, all of Los Angeles, Cal., for bankrupt.

Edward M. Raskin, of Los Angeles, Cal., for the trustee.

Edward M. Raskin, of Los Angeles, Cal., for the creditor, Roy Rosen.

YANKWICH, District Judge.

Marjorie Ayres Cummings was adjudicated a bankrupt on January 15, 1947. Her schedules showed liabilities in the sum of $75,982.11 and no assets, except some exempt wearing apparel of small value and $150 in cash.

On May 14, 1947, Roy Rosen, a creditor, filed objections to discharge upon four grounds:

(1) That the bankrupt made false oaths in the proceedings in knowingly, fraudulently and intentionally testifying as to certain matters.

(2) That the bankrupt, with intent to conceal her financial condition, either destroyed or concealed or failed to keep books of account or records from which her financial condition and business transactions might be ascertained.

(3) That the bankrupt had concealed property belonging to her with intent to hinder, delay and defraud her creditors, and had fraudulently omitted to list in her schedule of assets certain real property held in trust for her.

(4) That within twelve months prior to adjudication of the bankrupt, the bankrupt had, with intent to hinder, delay and defraud her creditors, concealed property belonging to her by knowingly and intentionally continuing the trial of a certain divorce action, known as Marjorie Cummings v. Roland Cummings, pending in the Superior

Court of the State of California, County of Los Angeles, and being No. D–312, 992, to a period in excess of six months from the date of her adjudication, for the express purpose of keeping any assets which she might obtain therein from the trustee and creditors. Bankruptcy Act, § 14, sub. c(1, 2, 4), 11 U.S.C.A. § 32, sub. c(1, 2, 4).

On December 8, 1947, George Gardner, the Trustee, filed a petition for an order requiring the bankrupt to turn over property which had been awarded to the bankrupt in an interlocutory decree of divorce dated September 25, 1947. Bankruptcy Act, § 70, sub. a(5), 11 U.S.C.A. § 110, sub. a(5).

On July 6, 1948, the Referee entered separate findings and orders denying the creditor's objections to discharge and denying the Trustee's turn-over petition.

In brief, the Referee found all the allegations of the objections to be untrue. More specifically, as to Objection 1, he found that, while the testimony as to certain matters was untrue, that it was not knowingly so. As to Objection 4, he found, as will appear further on in the discussion, that certain steps were taken by the bankrupt not to bring her pending divorce action to a hearing, but that her acts with relation to it did not constitute a fraudulent transfer or concealment of assets under the Act.

Such finding, in substance, was also made on the petition for a turn-over order.

Before me are petitions to review these orders.

In addition to full findings, we have, in this case, memoranda by the Referee in which he states the legal bases for his conclusions. This procedure, especially in complicated matters, is to be commended. For it makes the task of the reviewing court easier.

## I.

### The Order Granting Discharge.

 The order refusing to deny discharge because of alleged improper actions and concealments (Bankruptcy Act, § 14, sub. c(1, 2, 4), 11 U.S.C.A. § 32, sub. c(1, 2, and 4) on the part of the bankrupt presents, in the main, a question of fact, as to which the conclusion of the trier of facts is bind-ing on us unless clearly erroneous. Federal Rules of Civil Procedure, rule 52, 28 U.S. C.A. More, only abuse of discretion warrants interference with a Referee's ruling on discharge. See, In re Freelove, D.C.Cal., 1947, 74 F.Supp. 666. No useful purpose could be subserved by reviewing, in detail, the testimony relating to the alleged failure to keep books (Cf. In re McNay, D.C. Cal., 1945, 58 F.Supp. 960), or the asserted misstatements of fact on which the trustee based his objection to discharge. The facts as to each of these objections were such that reasonable persons could reach different conclusions as to whether there was conduct warranting denial of discharge. The Referee is entitled not only to the full benefit of his own choice of contradictory versions of a transaction, but to his own inferences from even admitted facts. In re Christ's Church, D.C. Cal., 1948, 79 F. Supp. 42, 45-46; Yankwich, Findings under the Federal Rules of Civil Procedure, 1948, 8 F.R.D., p. 271, 290, and the cases cited in Footnotes 6 to 9, pp. 288-290; Grace Bros. v. C.I.R., 9 Cir., 1949, 173 F.2d 170, 177-178.

The acts of the bankrupt in relation to the divorce action which she had pending against her husband at the time her petition was filed, and her action in delaying its determination until more than six months after adjudication—while referring to the first order under review, the objection to oischarge—do, in reality, involve the fundamental question of the second order, the requested turn-over of the property. They will, therefore, be covered by the comments to follow.

## II.

### The Order Refusing Turn-Over.

(A) *The Nature of the Wife's Interest in Community Property*

The trustee sought a turn-over order of the property which came into the possession of the bankrupt, after adjudication, through the institution of her divorce proceeding before the adjudication, and which resulted in an interlocutory decree of divorce awarding her certain property of considerable value. The date of the interlocutory decree was September 25, 1947. The adjudication was made on January 15, 1947. The trustee based his claim on Section 70,

sub. a(5) of the Bankruptcy Act of 1938, 11 U.S.C.A. § 110, sub. a(5), which, among other things, gives the trustee title to certain properties vested in the bankrupt at the time of the adjudication or which become transferable, in whole or in part, by the bankrupt within six months after bankruptcy. 11 U.S.C.A. § 110, sub. a(5 and 8).

The position of the trustee stems from the contention that, as under the community-property law of California, the interest of the wife is vested (California Civil Code, Sec. 161a), the institution of the divorce proceeding to terminate the marriage relationship was, in effect, an action to partition the property, which culminated in the interlocutory decree, so as to pass the title to the trustee.

■■ The trustee seems to rely, in good part, upon what I, myself, said about the nature of the community interest of the wife under California law in Bank of America v. Rogan, D.C.Cal.1940, 33 F.Supp. 183. But in that very opinion, I pointed to the fact that theoretical determinations as to whether the interest of the wife is vested or not, do not solve specific problems. After analyzing the nature of the wife's interest, in the light of its legislative history, I concluded that it was a distinct estate which should not be included in the husband's estate, after his death. This for the reason that it was "an ownership of her own, definite enough to warrant its exclusion from the husband's estate." Bank of America v. Rogan, supra, 33 F.Supp. at pages 183, 189. So here, the problem is whether, by the institution of an action for divorce and the entry of the interlocutory decree, a definable segregation of the wife's interest in the property took place which, later, passed to the trustee. The Referee ruled rightly that it did not. The matter is governed by state law. Taylor v. Voss, 1926, 271 U.S. 176, 191, 46 S.Ct. 461, 70 L.Ed. 889; Wilson v. Robinson, 2 Cir., 1936, 83 F.2d 397, 398. And it is the law of California that, during the continuance of the marital relation, the wife's interest in the community property *does not pass to the trustee in bankruptcy.* The Supreme Court of California, by denying a hearing in the principal case decided by

the District Court of Appeal, First Appellate District, has sanctioned this principle. Smedberg v. Bevilockway, 1935, 7 Cal.App.2d 578, 46 P.2d 820, More, the same Court made it plain in a later case, Grolemund v. Cafferata, 1941, 17 Cal.2d 679, 111 P.2d 641, that the conclusion there reached was in accord with the provision of the Civil Code which, in 1927, redefined the nature of the wife's interest in community property, California Civil Code, Sec. 161a by saying:

"Though the court in the Smedberg case did not discuss the effect of section 161a, it reasonably can be inferred from that decision that the District Court of Appeal was of the opinion that section 161a of the Civil Code does not change the nature of the wife's interest to a vested one so as to give her creditors the right of sequestration by attachment, execution or any other legal proceeding. Otherwise, her half of the community property would have been subjected to a lien by the trustee in bankruptcy, for not only has he under the Bankruptcy Act the right of the bankrupt, but also the rights of the judgment and other creditors. Bankruptcy Act, § 47, sub. a(2), 36 Stat. (1910) 838, 840, 11 U.S.C.A. § 75, sub. a(2); Remington, Bankruptcy, (1923), Sec. 1552; Noyes v. Bank of Italy, 1929, 206 Cal. 266, 274 P. 68." Grolemund v. Cafferata, supra 17 Cal.2d at page 686, 111 P.2d 641, 644.

And see, 2 Remington on Bankruptcy, 4th Ed., 1941, Sec. 1223; 4 Collier on Bankruptcy, 14th Ed., 1942, Sec. 70.17, pp. 1041-1043.

(B) *The Effect of Divorce Proceedings on Community Property.*

■ This being so, does the institution of the divorce proceeding place the property in the custody of the court for the purpose of segregating the interest of the spouses? The contention of the Trustee in that respect, which the Referee rejected, is grounded chiefly on the following dictum in the case just cited:

"Furthermore, by this decision the husband's power and right of management and control are preserved, for the opinion points out that since neither the husband nor the wife had taken steps toward a partition of the community property, so as

to free the wife's interest from the management and control of the husband, she had no power to deal with her interest in any way, hence no power to that end was available to the trustee in bankruptcy". Grolemund v. Cafferata, supra 17 Cal.2d at page 686, 111 P.2d at page 644.

From this, the Trustee draws the inference that, because the trial court—assuming that the divorce was granted—was under obligation to divide the community property (Calif.Civil Code, Secs. 146, 147), the institution of the divorce action "crystalized" the right to "a partition of the community property." In this manner, it is argued, the right to partition accrued prior to the decree and passed to the Trustee. I do not find in the language used by the Supreme Court of California warrant for these conclusions. For, if I did, I would have to hold that the mere institution of an action for divorce accompanied by a prayer for the division of community property affected the power of management of the husband. But California courts have ruled consistently, since early in the State's judicial history, that this was not the effect of the institution of a divorce proceeding. On the contrary, the commencement and pendency of a divorce proceeding *does not* interrupt the powers of management of the husband and his right—in the absence of fraud on his part—to bind the property by such contracts or liens as he may create without the consent of the wife. Perkins v. Center, 1868, 35 Cal. 713; Lord v. Hough, 1872, 43 Cal. 581, 584; Chance v. Kobsted, 1924, 66 Cal.App. 434, 437, 226 P. 632; and see, Johnson v. National Surety Co., 1931, 118 Cal.App. 227, 5 P.2d 39; Cox v. Kaufman, 1946, 77 Cal.App.2d 449, 175 P.2d 260.

The addition of Section 161a "did not change the rule vesting in the husband the entire management and control of the community property." Grolemund v. Cafferata, 1941, 17 Cal.2d 678, 684, 111 P.2d at page 643, and see, Kirkwood, The Ownership of Community Property in California, 1933, 7 So. Cal.Law Rev. pp. 1 et seq.; Simmons, Interests of Wife in Community Property, 1934, 22 Cal.Law Rev., pp. 404 et seq.

So, the effect of the pendency of an action for divorce is not greater today than it was before the enactment of Section 161a. And that was summed up briefly in Chance v. Kobsted, supra, in these words:

"Even divorce proceedings pending do not, in themselves, interrupt the husband's powers with respect to the management and control of community property, as the effect of such proceedings is *not to take the property into the custody of the court.* The husband continues to have control of it and full power to dispose of it." Chance v. Kobsted, 1924, 66 Cal.App. 434, 437, 226 P. 632, 633.

The reasoning of these cases accords with the nature of divorce proceedings. They are not purely personal actions. The State is interested in the maintenance of the marriage relation. Cohen v. Cohen, 1916, 73 Cal.App.2d 330, 335-336, 166 P.2d 622; Yankwich, Marriage and Divorce, 1937, pp. 5 et seq. The institution of an action to dissolve it does not entail the duty to prosecute it to termination. Absent a cross complaint, the power of the plaintiff to dismiss is absolute. California Code of Civil Procedure, Sec. 581. Only after the entry of the interlocutory decree, does a dismissal of the action require the consent of both parties. Calif.Civil Code, Sec. 131. If the action is prosecuted to trial, a divorce decree may be denied to either party upon showing of connivance, collusion, recrimination, or limitation and lapse of time. Calif.Civil Code, Secs. 111–127. Even after the entry of the interlocutory decree, reconciliation and resumption of marital relations may render the interlocutory decree functus officio. And, if one of the spouses, notwithstanding such reconciliation, should surreptitiously obtain a final decree, it may be set aside as extrinsic fraud, even after death. Olson v. Superior Court, 1917, 175 Cal. 250, 165 P. 706, 1 A.L.R. 1589; McGuinness v. Superior Court, 1925, 196 Cal. 222, 237 P. 45, 40 A.L.R. 1110; Lane v. Superior Court, 1930, 104 Cal.App. 340, 285 P. 860; Peters v. Peters, 1936, 16 Cal.App.2d 383, 60 P.2d 313. And when this is the case, the decree becomes functus officio for all purposes, including the determination of the property rights by the interlocutory judgment. These results flow from the very nature of the interlocutory decree. They may be

summed up in a very brief statement of the Supreme Court of California:

"The obtaining and entry of an interlocutory decree of divorce does not sever the marital relation, and any disposition of property made thereby becomes effective only upon the entry of the final decree." Estate of Boeson, 1927, 201 Cal. 36, 40, 255 P. 800, 802. The death of either party before the entry of the final decree deprives the trial court of the power to enter the decree. Klebora v. Klebora, 1931, 118 Cal. App. 613, 5 P.2d 965; Borg v. Borg, 1938, 25 Cal.App.2d 25, 76 P.2d 218; Babcock v. Babcock, 1944, 63 Cal.App.2d 94, 97, 146 P.2d 279.

In sum, the interlocutory decree is merely a determination that after the lapse of a year, the parties would—if no impediments have arisen—be entitled to a decree dissolving the marital relation and disposing of the community property in the manner described in the interlocutory decree. Its provisions are not operative until the entry of the final decree. Abbott v. Superior Court, 1924, 69 Cal.App. 660, 232 P. 154; Gould v. Superior Court, 1920, 47 Cal.App. 197, 191 P. 56. And, as appears clearly, many contingencies, some dependent upon the actions of the parties themselves, such as reconciliation, others consequent to matters beyond their control, while still others conditioned by the action of the court (Cf. Weeks v. Superior Court, 1921, 187 Cal. 620, 203 P. 93), may stand in the way of a final decree ever being entered. And even where, as here, the interlocutory decree is couched in terms of a present award ("that plaintiff and defendant are each hereby awarded as her or his sole and separate property respectively"), there is no absolute finality to the disposition. Cf. Comment, Effect of Interlocutory Judgment upon Property Rights, 1932, 20 Cal.Law Rev., p. 290, 294. For, despite such direct award, the homestead rights of either party cannot be cut off until the final decree is entered and the marriage actually dissolved. Leavitt v. Leavitt, 1933, 134 Cal.App. 145, 24 P.2d 910. Again, aside from the contingencies already alluded to, which may make the interlocutory decree functus officio, it is not final until the expiration of the six-months statutory period of appeal.

See, Leupe v. Leupe, 1942, 21 Cal.2d 145, 149, 130 P.2d 697.

## (C) The Interest of the Trustee

■ The institution of the action for divorce, as demonstrably appears from what precedes, did not vest in the bankrupt any right to any specific property. And, assuming that the interlocutory decree confers upon her certain terminable interests, they did not accrue to the Trustee. For the Trustee is entitled only to the rights which are granted to him by Section 70 of the Bankruptcy Act, 11 U.S.C.A. § 110. The Trustee could not "be vested by operation of law with the title of the bankrupt as of the date of the filing of the petition". 11 U.S.C.A. § 110 sub. a. This, for the obvious reason that, on the date of the bankruptcy, January 15, 1947, the bankrupt had no title to any community property that might be awarded to her in the divorce proceeding which would pass to the Trustee. See, Smedberg v. Bevilockway, 1935, 7 Cal. App.2d 578, 46 P.2d 820; Grolemund v. Cafferata, 1941, 17 Cal.2d 679, 111 P.2d 641.

The bankrupt's property rights under the decree do not fit into any of the divisions of property rights, which, by the mandate of the Section just referred to—pass to the Trustee. They were not powers which the bankrupt might have exercised for his own benefit. 11 U.S.C.A. § 110 sub. a(3). They could not be called property transferred by the bankrupt in fraud of his creditors. 11 U.S.C.A. § 110 sub. a(4). They were not property or a right of action which she could have transferred, or which might have been levied upon and sold under judicial process against her or otherwise seized, impounded or sequestered prior to the filing of the petition. 11 U.S.C.A. § 110 sub. a(5); Smedberg v. Bevilockway, 1935, 7 Cal.App.2d 578, 46 P.2d 820; Grolemund v. Cafferata, 1941, 17 Cal.2d 679, 111 P.2d 641. They did not constitute rights of action arising upon contracts. 11 U.S.C.A. § 110, sub. a(6). They could not be called contingent estates which became assignable interests within six months after adjudication. 11 U.S.C.A. § 110, sub. a(7). Nor were they property which vested in the bankrupt within six months after adjudi-

cation by bequest, devise or inheritance, or property which became transferable by him within such period. 11 U.S.C.A. § 110, sub. a(8) and concluding clauses.

█ In sum, whether the problem be considered in the light of the nature of the property under California law or of the law of bankruptcy, the conclusion is inescapable that neither at the time of the adjudication nor within any legal period prescribed by the Bankruptcy Act, did the bankrupt have an interest which passed to the Trustee. The theory of the Trustee upon which the existence of such interest is postulated, would require us to retroject whatever property rights were acquired by the dissolution of marriage and the decree which made it final to the date of the bankruptcy, at which time there had been no severance of the marital relation or adjudication of the community property rights, but only an action pending in which the bankrupt and her husband each sought the dissolution of the marriage and a different division of the community property. To transmute into a vested right the merely expressed wish of the bankrupt to terminate the marital relation and have her community property rights determined—a wish which many contingencies, some of her own, and others not of her own, making, could nullify, before it matured into a binding judicial decree—is to do violence to the language of the Bankruptcy Act. The Act seeks to transmit to the trustee property rights *in being* at the time of the bankruptcy or rights, which, in due course, would *come into being* within a certain period, in a certain stated manner. 4 Collier on Bankruptcy, 1948, 15th Ed., Sec. 70.04; 3 Remington on Bankruptcy, 4th Ed., 1941, Sec.

1178. And there would be no reason why —even without the institution of the action for divorce—the interests of the wife in the community property should not pass to the trustee. *Yet it is conceded that it does not.*[1]

█ It follows that the bankrupt's failure to refer to the pendency of the divorce action during the proceedings was not a concealment of property for which discharge should be denied. Bankruptcy Act, Sec. 14, sub. c(4), 11 U.S.C.A. § 32, sub. c (4). And that the Referee was right in rejecting the opposition to discharge on that ground, as he was also in declining to turn over to the Trustee the property ultimately derived by the bankrupt from her joint estate with her husband.

█ We grant that the action of the bankrupt in delaying the final determination of her property rights in the action for divorce until they could not be reached by creditors might not accord with the highest standards of ethics. But, for that matter, the very act of bankruptcy—repudiation of one's debts—may be considered unethical by persons of high moral sensibility. Indeed, only modern legislation, such as our own Bankruptcy Acts, lifted the stigma which, in the past, attached to the act of bankruptcy. And which caused the great Charles Lamb to state it as his "deliberate judgment" that "all bankrupts, of whichever denomination, civil or religious, ought to be hanged." Letter to Bernard Barton, quoted in Mencken, A New Dictionary of Quotations, 1942, p. 82. As we are expounding a law which seeks to do away with the taint which formerly adhered to bankruptcy, we cannot give to the Trustee rights which are not his under

1 There is no analogy between the situation with which we are dealing here and the interests in remainder with which the court was confronted in the case upon which the Trustee leans so heavily. In re Bryson, D.C.Tex.1931, 49 F.2d 408. There, the bankrupt's father and mother—many years before the bankruptcy—had made a contractual joint will and codicil vesting in the survivor valuable lands, during the lifetime of such survivor, with remainder to their children, one of whom was the bankrupt. The father died ten years before the bankruptcy. The joint will devised property contingent only upon the death of the mother. Of this, she could not divest her children. Under the law of Texas, the bankrupt's interest as a remainderman, was an interest, the enjoyment of which was postponed, which vested in him, and, consequently, in the Trustee. And his concealment of the fact was held a ground for denial of discharge. But, as the preceding discussion amply shows, at the time of the bankruptcy, the bankrupt here did not have the type of interest in property which passed to the trustee.

the law, merely because we may be convinced that, in the particular instance, a woman bankrupt *will be enabled to secure her discharge from debts which she now may have the means of liquidating (and should, in good conscience, liquidate) in whole or in part.*

Hence the following rulings:

(1) The Order of the Referee dated July 6, 1948, overruling the objections of the Trustee to the discharge of the bankrupt and discharging the said bankrupt is affirmed.

(2) The Order of the Referee dated July 6, 1948, denying the Trustee's petition for an order requiring the bankrupt to deliver certain specified real and personal property to George Gardner as Trustee and adjudging and decreeing that the bankrupt was the owner of and entitled to possession of said property free and clear of any right, title and interest therein on the part of the Trustee or the bankrupt estate is affirmed.