[Civ. No. 46108. Second Dist., Div. Four. Dec. 1, 1975.]

OPAL M. HANSFORD, Plaintiff, Cross-defendant and Appellant, v. BEN LASSAR, Defendant, Cross-complainant and Respondent; LAWRENCE W. HANSFORD, Cross-defendant and Appellant.

**COUNSEL**

Floyd H. Norris for Plaintiff, Cross-defendant and Appellant and for Cross-defendant and Appellant.

Wilbur E. Quint for Defendant, Cross-complainant and Respondent.

**OPINION**

**JEFFERSON (Bernard), J.**—Plaintiff Opal M. Hansford filed this action to quiet title to real property. She also sought injunctive relief to prevent the sale of said real property which consisted of a house and lot; she alleged slander of title and sought $25,000 damages for emotional distress. Named as defendants were Ben Lassar, a judgment creditor of plaintiff's husband, who had levied on the property, John W. Carpenter, Sheriff of Santa Barbara County[1] and various Does. Prior to trial, plaintiff was granted a preliminary injunction.

---

[1] At the hearing on the preliminary injunction, the parties stipulated that the sheriff be dismissed from the action on condition that no sale of the property would be conducted until this dispute had been resolved.

Defendant Lassar cross-complained against plaintiff and her husband, Lawrence W. Hansford, seeking declaratory relief as to the ownership of the property in question; he also asked that a conveyance by Lawrence of his interest in the property to his wife, Opal, alleged to be fraudulent, be set aside and he requested $25,000 damages for fraud.

Trial was by the court. Defendant Lassar received judgment against plaintiff on plaintiff's complaint, and against plaintiff and her husband, Lawrence, on the cross-complaint. The trial court set aside the conveyance and dissolved the preliminary injunction, but did not award damages. Plaintiff appeals.

From affidavits filed with the trial court, as well as evidence presented to the trial court at the trial, we summarize the factual background of this dispute. In 1956, plaintiff and her husband purchased a residence at 234 No. "B" Street in Lompoc, California, for $13,000, taking title as joint tenants. The value of this property at time of trial was not made clear, but the indebtedness outstanding against it was approximately $3,000.

At some point during the marriage of the cross-defendants it had been agreed that the wife would operate the family business, the Hansford Vending Company, due to the husband's habit of making bad investments. Earnings from this business supported the family which included three children, and was the source from which payments on the family home had been made.

In 1967 husband invested in a restaurant in Los Angeles, and executed a promissory note (as co-maker with Robert E. Harvey) in favor of defendant Lassar for $20,000. The restaurant venture soon became a financial disaster. Some payments were made on the note, but ultimately Lassar obtained a judgment, on March 13, 1973, against husband in Los Angeles Superior Court for $17,268.61. An abstract of this judgment was duly recorded in Santa Barbara County on April 9, 1973.

On August 14, 1973, plaintiff recorded, in Santa Barbara County, a quitclaim deed by which husband conveyed his interest in the Lompoc property to her. The deed was dated September 4, 1968, and the husband's signature was acknowledged by a notary in Yuma, Arizona. Husband testified at the trial that he had been in Arizona on business and happened to have the deed with him, and that he decided while there to execute it. When he returned to California within a few days, he gave the deed to plaintiff. Plaintiff kept possession of it for nearly five

years before recording it. Both husband and wife offered various accounts of the motivation for this transaction in early September 1968. It seems clear, however, that by September 4, 1968, they knew that the husband's most recent investment had gone sour. In connection with the preliminary-injunction hearing, plaintiff wife filed an affidavit with the court in which she stated: "We were financially embarrassed at the time and did not have sufficient funds to pay Mr. Lassar and other creditors and I stated I was not going to lose our home so Mr. Hansford agreed to convey it, his one-half of the home to me, if I did not sue for a divorce." When the deed was recorded, the consideration for the conveyance was described as less than $100.

After the recording of the conveyance, defendant Lassar secured in Los Angeles County, in October 1973, a writ of execution and levied on husband's interest in the Lompoc property on November 2, 1973. The public sale scheduled for December 1973, was restrained by temporary order and then by the preliminary injunction.

Wife contended at the trial that the property was her sole and separate property and, hence, in accordance with Civil Code section 5121, could not be reached by Lassar, her husband's judgment creditor. Defendant and cross-complainant Lassar claimed that he was either entitled to reach one-half of the property if held in joint tenancy, or all of it if it was found to be community, and that the quitclaim deed was a fraudulent conveyance, intended to defeat husband's creditors.

The findings of fact and conclusions of law made by the trial court are before us on this appeal. They show that the trial court determined that the Lompoc property was the community property of plaintiff and her husband. It was found that the quitclaim deed was a conveyance made with actual intent to defraud creditors and specifically defendant Lassar and, also, that it was made without a fair consideration and rendered husband insolvent. Judgment was therefore entered in favor of Lassar, the judgment creditor, both as defendant and as cross-complainant.

■ Plaintiff first contends on this appeal that there existed in her favor a presumption that she and her husband owned the Lompoc residential property as joint tenants, and that the evidence was insufficient to overcome this presumption; that the trial court erred, therefore, in determining that the property was community property rather than joint-tenancy property. She claims that the decisional law is to the effect that there must be convincing evidence to rebut this presumption and

justify a finding that a husband and wife own residential property as community property contrary to the record title as joint tenants.

■ We turn first to a consideration of the statutory law. Section 5104 of the Family Law Act[2] provides that "[a] husband and wife may hold property as joint tenants, tenants in common, or as community property." Section 5110 of the act provides, inter alia, that as between the husband and wife, "upon dissolution of marriage or legal separation only" and for purposes of division of such property, there is a presumption that a single family residence acquired by them during marriage as joint tenants is their community property.

In view of the express language of section 5110, this community-property presumption has no application to the instant case as it involves a dispute with a third party, rather than one between husband and wife in a dissolution of marriage or legal separation proceeding. The presumption that is applicable in this case at bench is that of a joint-tenancy ownership that is the presumed fact which flows from the basic fact of a deed that is joint tenancy in form.

The California Supreme Court stated this presumption in *Machado* v. *Machado* (1962) 58 Cal.2d 501, 506 [25 Cal.Rptr. 87, 375 P.2d 55] as follows: "Although a joint tenancy deed is not conclusive as to the character of real property, it creates a rebuttable presumption that it is held in joint tenancy. The presumption created by the deed cannot be overcome by testimony of the hidden intentions of one of the parties, but only by evidence tending to prove a common understanding or an agreement that the character of the property was to be other than joint tenancy. . . . [Citations.]"

Although *Machado* does not specifically characterize the joint-tenancy rebuttable presumption as a presumption that affects the burden of proof rather than a presumption that affects the burden of producing evidence, the intent of the court is clear. ■ The joint-tenancy presumption falls within the definition of a presumption that affects the burden of proof as set forth in Evidence Code section 605, as it is established to implement a public policy *other than* to facilitate the determination of the particular action in which the presumption is to be applied. The public policy involved is that of favoring the stability of titles to property.

[2]All sections of the Family Law Act are sections of the Civil Code. Section 5104 was formerly section 161 of the Civil Code.

(See *Baron* v. *Baron* (1970) 9 Cal.App.3d 933 [88 Cal.Rptr. 404] (community property presumption classified as a presumption affecting the burden of proof).)

As a presumption that affects the burden of proof, the joint-tenancy presumption requires the opponent of the presumption to *rebut* the presumption by proving the nonexistence of the presumed fact that the interests in the property are owned as joint tenancy interests. The opponent thus has the burden of establishing that the ownership interests in the property are held in some other capacity such as single ownership, tenancy in common, or as community property.

Two questions are involved in rebutting the presumed fact of the joint-tenancy presumption. One relates to the burden-of-proof standard. Is the standard that of proof by a preponderance of the evidence or a higher standard such as the clear-and-convincing-proof standard? The second question concerns the kinds of facts that must be shown to rebut or prove the nonexistence of the presumed fact.

■ Evidence Code section 115 provides that, in the proof of any issue, unless a different standard of proof is set forth by constitutional, statutory or decisional law, the burden of proof shall be proof by a preponderance of the evidence. There appears to be no compelling policy reason to require more than a preponderance of the evidence to sustain the burden of rebutting or proving the nonexistence of the presumed fact in the joint-tenancy presumption. With no contrary indication in the record, we must assume that the trial judge applied the appropriate burden-of-proof standard.

We turn next to the question of the kinds of facts that may be deemed sufficient to rebut the presumed fact of joint-tenancy ownership. The *Machado* court stated that this presumed fact could *not* be rebutted by testimony of the hidden intentions of one of the grantees, but only by evidence tending to prove a common understanding on the part of the grantees or an agreement by the grantees that the character of the property was to be other than joint tenancy.

It has been held that evidence of the source of the funds used to purchase the property is insufficient, in and of itself, to rebut the joint-tenancy presumption. (*Siberell* v. *Siberell* (1932) 214 Cal. 767 [7 P.2d 1003]; *Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202 [259 P.2d 656].) But demonstrated ignorance on the part of a husband and wife as to the

nature of joint tenancy and how such holding is distinguished from community property ownership has been held on occasion to provide ample support for a determination that the parties actually intended to hold the property as community property. (*May* v. *May* (1968) 262 Cal.App.2d 668 [68 Cal.Rptr. 863]; *Oak Knoll Broadcasting Corp.* v. *Hudgings* (1969) 275 Cal.App.2d 563 [80 Cal.Rptr. 175].)

■ There has been no retreat from the principle enunciated in *Machado* that, in order to rebut the presumed fact of joint-tenancy ownership involved in the joint-tenancy presumption, the evidence must establish that there was a common understanding of the owners of the property or an agreement that the character of the property was to be other than joint tenancy. That understanding may be shown by circumstantial evidence, including the declarations of the parties, and their conduct as well. (*Baron* v. *Baron* (1970) 9 Cal.App.3d 933 [88 Cal.Rptr. 404].)

■ In the case at bench, both plaintiff and her husband testified that at the time they purchased and took title to the property, they received no information about joint tenancy and did not know the differences in legal consequences between joint-tenancy ownership and community-property ownership. The home became the family residence of the Hansfords and their three children were raised there. Plaintiff's time was divided between managing the family vending machine business and being a mother and homemaker.

All payments on the residential property were made from profits of this family business. Neither plaintiff nor her husband ever maintained a checking account separate from the family business checking account. Plaintiff's husband, as well as plaintiff, wrote checks on this one checking account. All family expenses, including those for food, clothing for all members of the family, utilities, repairs and improvements on the home, transportation and recreation, were paid for from checks on this family business account. The trial court apparently concluded that the plaintiff and her husband had conducted themselves throughout the marriage as if the residential property were community property, and so held.

This evidence is not unlike that found in the *Baron, May* and *Oak Knoll Broadcasting Corp.* cases, and is clearly sufficient to establish the facts necessary to rebut the joint-tenancy-ownership presumption by proving the nonexistence of the presumed fact of joint-tenancy ownership, namely, that there was a common understanding of the plaintiff

wife and her husband, Lawrence, as owners of the property, that the property was their community property.

Despite the fact that other reasonable inferences could be drawn from the evidence, since the trial court's determination that defendant and cross-complainant Ben Lassar had sustained his burden of proof of rebutting the joint-tenancy-ownership presumption by proving the nonexistence of the presumed fact of joint-tenancy ownership was also based on reasonable inferences, we are compelled to uphold the trial court's determination here. (See 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245, p. 4236 for a discussion of this rule of appellate review.)

Plaintiff also asserts that there was insufficient evidence adduced at the trial to support the trial court's finding that the conveyance by husband to wife rendered husband insolvent, thereby bringing section 3439.04 of the Civil Code into play.

The trial court made two findings concerning the conveyance from husband to wife as being fraudulent. In finding No. 9, it was stated that "[a]foresaid conveyance from husband to wife was fraudulent to creditors and to Lassar specifically because made without a fair consideration and because husband was rendered insolvent thereby." It also made finding No. 8, which stated: "At the time husband delivered said deed to wife, he had the actual intent of defrauding Lassar by preventing him from attaching or levying on husband's interest in said property in satisfaction of aforesaid indebtedness."

These findings were framed in terms of pertinent provisions of the Uniform Fraudulent Conveyance Act (Civ. Code, §§ 3439.01 -3439.12). The act provides two distinct grounds, set forth in different sections thereof (§ 3439.04 and § 3439.07), for finding a conveyance to be fraudulent as to creditors. (See *Aggregates Associated, Inc.* v. *Packwood* (1962) 58 Cal.2d 580 [25 Cal.Rptr. 545, 375 P.2d 425].) The first ground is that of a conveyance made without a fair consideration *and* which renders the transferor insolvent. This is the *constructive fraud* situation. (*TWM Homes, Inc.* v. *Atherwood Realty and Inv. Co.* (1963) 214 Cal.App.2d 826 [29 Cal.Rptr. 887].) The second ground is that of a conveyance made with *actual* fraudulent intent; neither insolvency nor lack of a fair consideration is material. (See *Packwood* and *Atherwood,* both *supra.*)

In dealing with *constructive fraud*, we are concerned with two sections of the Uniform Fraudulent Conveyance Act. Section 3439.02, subdivision (a), provides: "A person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." Section 3439.04 provides: "Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."

Section 3439.07, which applies to actual fraudulent conveyances, states: "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."

█ It is true, as plaintiff contends, that the burden of proof as to insolvency under the act is on the party claiming that it is a fact, and that insolvency is never presumed. In *TWM Homes, Inc.*, the court approved of the rule stated in *Miller* v. *Keegan* (1949) 92 Cal.App.2d 846, 852 [207 P.2d 1073] that "[a]s a general rule 'solvency and not insolvency is presumed,' " and that "[t]o overcome this presumption a fair interpretation of the statute requires some basis in evidence for determining that the amount of the debtor's obligations exceeded the then present fair salable value of his nonexempt assets." It is also to be noted that "[n]either a failure to meet credit obligations nor an inability to pay bills because of lack of ready cash is sufficient, standing alone, to warrant a conclusion of insolvency, nor is either circumstance necessarily inconsistent with solvency." (*TWM Homes, Inc.*, *supra*, 214 Cal.App.2d at p. 847.)

Plaintiff contends that cross-complainant Lassar failed to sustain the burden of proving that cross-defendant husband's conveyance to plaintiff wife rendered husband insolvent and was made without a fair consideration. Certainly the solvency presumption is one that affects the burden of proof and requires the opponent of the presumption to prove the fact of "insolvency," which is proof of the *nonexistence* of the presumed fact of "solvency," by a preponderance of the evidence. █ Plaintiff's contention is valid. A review of the record herein fails to establish with any clarity the total financial picture of cross-defendant husband, to justify the trial court's finding that husband's conveyance to wife rendered him insolvent within the meaning of Civil Code section 3439.02, subdivision (a).

Evidence was presented that as of the date of husband's conveyance to wife on September 4, 1968, there were notes outstanding from several individuals, made payable to husband, and in a total sum in excess of $40,000. One of these notes was in the sum of $33,000. However, the trial court refused to permit husband to testify to his opinion of the fair market value of this note upon the date of the quitclaim deed—the conveyance from husband to wife. This ruling is prejudicial error.

■ An owner of personal or real property, even though not qualified as a valuation expert, is permitted by decisional and statutory law, to testify to an opinion of the value of such property. (Evid. Code, § 800; *Crail* v. *Blakely* (1973) 8 Cal.3d 744 [106 Cal.Rptr. 187, 505 P.2d 1027].)

■ This proffered testimony as to the fair market value of husband's assets on the date of his conveyance was clearly relevant to establish the "fair salable value of his [husband's] assets," a required ingredient for the determination of solvency or insolvency of a grantor under Civil Code sections 3439.02, subdivision (a) and 3439.04 that define a constructive fraudulent conveyance. The rejection by the trial court of this rule of permissible lay-opinion testimony cannot be justified on the ground that husband testified that these notes represented loan funds to the note makers emanating from monies taken from the family vending machine business which husband regarded as the separate property of the wife. This testimony was found by the trial court to be untrue since there was a finding that the earnings of the business constituted community property. Of necessity, this community-property finding constitutes a finding also that husband had an ownership interest in the notes that were in his name as payee.

There was testimony that as of the date of the trial in 1973, husband had received no payments on these notes. But such evidence of a 1973 value of husband's assets cannot be accepted as credible proof of the value of husband's assets as of September 4, 1968, in light of the trial court's ruling rejecting relevant evidence proffered by cross-defendants husband and wife as to the fair market value of husband's assets—mainly promissory notes—as of September 4, 1968, the crucial date for the issue of insolvency as an element of constructive fraud.

Since we hold that the evidence is insufficient to support the trial court's finding that husband's conveyance to his wife rendered him insolvent, we need not consider the question of whether the evidence supports the trial court's finding that husband's conveyance to his wife was made without a fair consideration being received for such conveyance.

We construe plaintiff's attack upon the trial court's finding that husband's conveyance to wife constituted a constructive fraud upon creditors to include an attack upon the trial court's finding that husband's quitclaim deed to his wife, plaintiff herein, was a conveyance made with an *actual* intent to defraud husband's creditors, and specifically to defraud cross-complainant Lassar, in violation of the provisions of Civil Code section 3439.07. We look first to the question of the applicable burden-of-proof standard. Must the fact of an *actual* intent to defraud be proved by a preponderance of the evidence or by the higher standard of clear and convincing proof? We find the answer to this question in *Aggregates Associated, Inc.* v. *Packwood* (1962) 58 Cal.2d 580 [25 Cal.Rptr. 545, 375 P.2d 425]. There the court said that although fraud, as a fact, like any other fact, may be proved by circumstantial evidence, "it remains true that *actual* fraud must be proved by *clear and convincing evidence* [citation] . . . ." (*Aggregates Associated, Inc., supra,* 58 Cal.2d at p. 588.) (Italics supplied.)

We turn next to a consideration of the question of whether there is substantial evidence to support the trial court's finding of an *actual* intent to defraud creditor Lassar on the part of husband in quitclaiming any and all interest in the residential property to his plaintiff wife. Although the record does not reflect what burden-of-proof standard the trial court applied in making its finding that an actual intent to defraud had been established, there is no necessity that the record reflect the burden-of-proof standard applied by the trial court in a court trial. We are required to assume that the trial court applied the correct burden-of-proof standard—the clear-and-convincing-proof standard for the issue of an actual intent to defraud. (See *Denham* v. *Superior Court* (1970) 2 Cal.3d 557 [86 Cal.Rptr. 65, 468 P.2d 193]; *Walling* v. *Kimball* (1941) 17 Cal.2d 364 [110 P.2d 58].)

In examining the evidence for its sufficiency to support the trial court's finding on the issue of actual intent to defraud, we do not substitute our judgment of the credibility of witnesses and the weight of the evidence for that of the trial court.

There is evidence in the record sufficient to support the trial court's finding that the conveyance by the husband of his interest in the family home to plaintiff, his wife, was made with the *actual* intent to defraud husband's creditor, cross-complainant Lassar. This finding comports with the provisions of Civil Code section 3439.07 which define the "actual" fraudulent conveyance as being one made with an actual intent (as

contrasted with an intent presumed in law—a constructive intent) to either hinder, delay or defraud present or future creditors. But this finding of "actual" intent to defraud was made without benefit of the evidence proffered by cross-defendants of the fair market value of other assets of husband transferor. There was no indication that these other assets were in any way exempt from execution or levy by creditors. This evidence proffered by cross-defendants was clearly relevant on the issue of whether cross-defendant husband's conveyance to his wife was made with intent to hinder, delay or defraud creditors.

In rejecting this proffered evidence, the trial court precluded cross-defendants from introducing evidence relevant to their defense—that husband did *not* make the conveyance to his wife with any *actual* intent to delay, hinder or defraud creditors in general or creditor Lassar in particular. It is true that a debtor may make a conveyance with an actual intent to defraud creditors even though he is *not* insolvent and possesses other assets available to his creditors for levy that are clearly sufficient to satisfy all indebtedness. (See *Fross* v. *Wotton* (1935) 3 Cal.2d 384 [44 P.2d 350].)

But although solvency does not preclude a finding of actual intent to defraud, it is not thereby rendered irrelevant on the issue of actual intent to defraud. Evidence of solvency of a debtor-transferor comes within the definition of "relevant evidence" found in Evidence Code section 210, as evidence having "any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." The disputed fact here is whether husband had an *actual* intent to defraud his creditor, cross-complainant Lassar. It was said in an early case that, with respect to the contention that a conveyance was *not* made with an intent to delay or defraud creditors, possession of other assets by a debtor is "competent as evidence tending in some measure toward that conclusion." (*First Nat. Bank of L.A.* v. *Maxwell* (1899) 123 Cal. 360, 372 [55 P. 980].)

We fully recognize that had this proffered evidence been admitted, the trial court might very well have reached the conclusion that husband's conveyance was made with an actual intent to defraud his creditors and specifically his creditor, cross-complainant Lassar. But with such evidence before it, along with all other evidence introduced on the issue, the trial court might also have reached a different conclusion. In view of the trial court's exclusion of such relevant evidence, duly proffered by cross-defendants husband and wife, we are unable to hold that there is substantial evidence to support the trial court's finding that

the husband's conveyance to his wife was made with an *actual* intent to defraud husband's creditors in general or the particular creditor, cross-complainant Lassar.

Paragraph 1 of the judgment denies plaintiff any relief on her complaint and awards costs to defendant. This portion of the judgment is supported by the court's finding that the property of plaintiff and her husband constituted community property of husband and wife contrary to plaintiff's contention that said property was her separate property. As explained *supra,* this finding is adequately supported by substantial evidence.

The remaining portions of the judgment, paragraphs 2, 3 and 4, deal with the issues raised by the cross-complainant. These portions of the judgment cannot stand since they are based upon findings that husband's quitclaim deed to his wife constituted an actual fraudulent conveyance as well as a constructive fraudulent conveyance. Since the findings as to fraud are not supported by substantial evidence, there is no support for paragraph 2 of the judgment which sets aside the husband's conveyance. Paragraph 3 of the judgment which declares that the real property of the plaintiff and her husband was community property is supported by the findings and the evidence except that the declaration that the property is *now* the community property of the Hansfords is based upon the finding that husband's conveyance to his wife was fraudulent.

The question to be determined by the trial court on retrial is that of the status of said property after the quitclaim deed of the husband to his cross-defendant wife. A conveyance by husband of his community interest in the property to his wife, if valid, would convert the entire property into the separate property of the wife. If the quitclaim deed from husband to wife is invalid, the entire property remains the community property of the parties.

 Under present decisional law, community property is available in its entirety to satisfy a husband's debts to his creditors. (*Spreckels* v. *Spreckels* (1897) 116 Cal. 339 [48 P. 228]; *Grolemund* v. *Cafferata* (1941) 17 Cal.2d 679 [1.11 P.2d 641]; *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557 [63 Cal.Rptr. 13, 432 P.2d 709].) The *Grolemund* case involved a dispute between a wife and a judgment creditor of her husband, a very similar situation to the one before us. It held that the judgment creditor could reach property in the possession of the wife. California has long adopted the rule (which differs from the "community debt" limitation accepted in other community property jurisdictions) that all of the husband's debts,

whether incurred before or after marriage, may be satisfied from the community estate. "The policy of protecting the husband's creditors outweighs the policy of protecting family income even from premarital creditors of the husband. Community property is therefore available to such creditors." (*Weinberg, supra,* 67 Cal.2d 557 at p. 562.) As was stated by the California Supreme Court in an early case, "[t]he community property may be lost in visionary schemes or in mere whims [of the husband]." (*Spreckels, supra,* 116 Cal. 339 at p. 345.)

A declaration of homestead is of course available to residential property owners to protect such property from the claims of creditors. (See Civ. Code, § 1237 et seq.) Indeed, under present law (Code Civ. Proc., § 690.50, effective July 1, 1975) it is available even after the homeowner has received notice of a levy against the property. The record before us does not reveal that plaintiff or her husband sought to utilize the beneficient provisions of the California law relating to homesteads to protect their residential property against the levy of execution by their creditors.

In view of the foregoing, the judgment is affirmed in part and reversed in part. Paragraph 1 of the judgment is affirmed; the remaining portions of the judgment are reversed, with directions to the trial court to determine on any retrial whether husband's quitclaim deed conveying his community interest in the residential property to his wife constituted either an actual fraudulent conveyance or a constructive fraudulent conveyance in accordance with the views expressed herein, and to dissolve the preliminary injunction or grant a permanent injunction accordingly.

Each party is to bear its own costs on appeal.

Kingsley, Acting P. J., and Dunn, J., concurred.

A petition for a rehearing was denied December 19, 1975, and respondent's petition for a hearing by the Supreme Court was denied January 28, 1976.