IN RE HUNTER'S ESTATE.
STATE, APPELLANT, *v.* HUNTER, RESPONDENT.
No. 9018.
Submitted April 18, 1951.   Decided July 31, 1951.
236 Pac. (2d) 94.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Charles V. Huppe, Asst. Atty. Gen., Mr. H. O. Vralsted, Sp. Asst. Atty. Gen., for appellant.

Mr. Howard A. Johnson, Butte, for respondent.

Mr. Vralsted and Mr. Johnson argued orally.

MR. JUSTICE METCALF:

William J. Hunter died testate July 13, 1948, willing his entire estate to his wife Thelma D. Hunter. At the time of his death he was a resident of the state of California. His estate was partly in California and partly in Montana. The gross estate in California amounted to $98,174.68. The gross estate in Montana amounted to $156,063.95.

Two items of the Montana property are the subject of this action. One, the decedent and R. L. Lail as co-partners, entered into a written contract for the purchase of a ranch in Beaverhead county consisting of approximately 7,120 acres and stocked with 1,000 head of livestock and other property. The purchase price of this ranch was $215,000. Decedent's interest in the ranch and the partnership bank account has been inventoried and appraised at $125,000. The wife of the decedent was not a party to the contract for the purchase of the ranch nor was she a partner in the partnership. The second item consists of a contract for the purchase of a 3,907 acre ranch in Beaverhead county. The contract price was $45,000. Also on the ranch were

certain personal property, tools, household furniture, farming equipment, etc., which was appraised at $5,363. This contract for the purchase of this ranch was in the individual name of the decedent and the decedent's wife was not named in the contract.

The surviving wife as executrix of the estate of William James Hunter, deceased, claims that the Montana property was purchased with funds acquired by her and her husband while residents of the state of California; that these funds constituted community property in California.

The respondent concedes that the law of the situs of the land ▮ governs the incidence of inheritance tax on the death of the owner. 11 Am. Jur., Conflict of Laws, sec. 30, p. 328; 1 Beale, Conflict of Laws, sec. 118D.2, p. 602; Restatement, Conflict of Laws, sec. 245, p. 329; In re. Gift Estate, Mont., 232 Pac. (2d) 328.

But respondent contends: That by virtue of the law of California the money that the decedent used to pay on the purchase contract of the land was community property. Property rights are not lost simply because property is transported into another state and exchanged there for other property. Citing Tomaier v. Tomaier, 23 Cal. (2d) 754, 146 Pac. (2d) 905, 908, and cases therein cited; Hammonds v. Com'r of Internal Revenue, 10 Cir., 106 F. (2d) 420, 424. Therefore, since this was Mrs. Hunter's money that was used for the purchase of the Montana land, a trust results. Citing R. C. M. 1947, sec. 86-103; 2 Beale, Conflict of Laws, sec. 242.1, p. 964; 41 C. J. S., Husband and Wife, sec. 466, p. 993.

The trial court adopted this theory and found: "That an undivided one-half interest in said property acquired in the State of California, immediately upon the acquisition thereof, vested in the said Thelma D. Hunter as the wife of said testator by reason of the community property laws of the State of California; that her said interest in this said community property into which it was converted has never been divested; that by reason of the premises, the said Thelma D. Hunter was the

equitable owner of an undivided one-half interest at all times prior to the death of said testator, and that the said interest did not pass to her by way of succession, inheritance, legacy or bequest, or by reason of testator's death or by gift in contemplation of death and is not subject to inheritance tax herein * * *''

The validity of the argument depends on the accuracy of the premise that according to California law one-half of the community property was vested in the wife prior to the testator's death.

We take judicial notice of the common law and statutes of California. R. C. M. 1947, sec. 93-501-2. In order to inform ourselves of the California law we may not only call upon counsel, sec. 93-501-3, but may resort to ''appropriate books or documents,'' 93-501-1, and ''ascertain from all available data what the highest court of the state will probably hold the state law to be.'' Chief Justice Stone in Helvering v. Stuart, 317 U. S. 154, 172, 63 S. Ct. 140, 149, 87 L. Ed. 154. Likewise the trial court took judicial notice of the California law and it is its determination of what that law is that is here reviewable. R. C. M. 1947, sec. 93-501-4.

In determining what the state law of California is upon the question before us, we are endeavoring to define the nature of the interest a husband and wife have in California community property prior to the dissolution of the marriage and then apply the Montana tax statutes to a transfer of that interest if applicable. In so doing we have no definitive decision of the highest court of California to guide us. Further we are compelled to analyze a system of ownership adopted largely from Spanish sources and foreign to our common law. For a discussion of the origin and extent of the community property system, see de Funiak, ''Principles of Community Property,'' Vol. 1, and the article by Evans, The Ownership of Community Property, 35 Harv. L. Rev. 47. In applying our taxing law to the interests growing out of a different system of law in a different jurisdiction we must also preserve the integrity of our own system

and protect our residents whose rights in both tax matters and ownership of property are fixed by Montana law. For example, in the instant case, suppose the husband in whom title is vested insofar as the record discloses had been the survivor. Could we have taxed his inheritance? Or what if a disinherited wife from a community property jurisdiction claims a vested interest in one-half of the property and a dower interest in the half allegedly belonging to the husband? We do not make any ruling on these questions. But they do indicate the complexity of the questions that arise when two systems of law from two jurisdictions collide. At the same time we give protection to the property of California citizens just as they protect the rights and property of our citizens. In re Thornton Estate, 1 Cal. (2d) 1, 33 Pac. (2d) 1, 92 A. L. R. 1343; Tomaier v. Tomaier, supra.

It was early established in California that the wife's interest in the community property was "a mere expectancy, like the interest which an heir may possess in the property of his ancestor." Van Maren v. Johnson, 1860, 15 Cal. 308, 312; Packard v. Arellanes, 1861, 17 Cal. 525.

Despite changes in the statutes and deviations in the decisions the wife's proprietary interest was not very different in 1927 when the California court decided Stewart v. Stewart, 204 Cal. 546, 553, 269 Pac. 439, 441. Many previous decisions were cited and the court concluded that, "These authorities hold uniformly and consistently that during the marriage the husband is the sole and exclusive owner of all the community property, and the wife has no title thereto, nor interest or estate therein, other than a mere expectancy as heir, if she survive him."

For a comprehensive analysis and citation of the history of the growth of California community property law prior to 1927, see the two Stewart cases: Stewart v. Stewart, 199 Cal. 318, 249 Pac. 197; and Stewart v. Stewart, 204 Cal. 546, 269 Pac. 439, supra. See also: Hooker, Nature of the Wife's Interest in Community Property in California (1927), 15 Cal. L. Rev. 302; Kirkwood, The Ownership of Community Property in California (1933), 7 So. Cal. L. Rev. 1; Simmons, The Interest of a Wife

in California Community Property (1934), 22 Cal. L. Rev. 404; Kirkwood, Equality of Property Interests Between Husband and Wife (1924), 8 Minn. L. R. 579; and the articles in California Jurisprudence, including 1930 Supplement, and the Ten Year Supplement. Especially comprehensive is the article by Dean McMurray of the University of California Law School in California Jurisprudence 1930 Supplement.

In 1927 the California legislature enacted section 161a, Civil Code of California, which says: ''The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in the community property.''

Immediately after the passage of section 161a an article in 16 Cal. L. Rev. (1927) 68, ''doubted that it has added to the law of the State of California.'' See also, 4 So. Cal. L. Rev. 395, 400. Dean McMurray (Cal. Jur., 1930 Supp., p. 108), takes the same position as does Cahn, Federal Taxation and Private Law (1944), 44 Columbia L. Rev. 669, 676. ''Meanwhile the California wife enjoys precisely the same privileges and remedies as before the enactment of the 1927 law.''

Dean Kirkwood of the Stanford Law School takes a contrary view (7 So. Cal. L. Rev. 11) as does Simmons (22 Cal. L. Rev. 404). The article on community property in the Ten Year Supplement to California Jurisprudence, particularly section 90, also suggests that the decision in United States v. Malcolm, 282 U. S. 792, 51 S. Ct. 184, 75 L. Ed. 714, recognizes that for income tax purposes a vested interest upon the wife has been conferred by section 161a and it might be followed in other respects. And in an acticle, ''Community Property—A Functional Approach'' (1950), 24 So. Cal. L. Rev. 42, 49, William M. Horne, Jr., declared that by the enactment of section 161a, ''In unequivocal language the California legislature then proclaimed the vestedness of the wife's interest and both the California and

United States Supreme Courts were compelled to recognize the legislative mandate as to the property acquired after 1927." The only case cited in support of the statement is United States v. Malcolm, supra. That was a per curiam opinion answering two questions certified by the Circuit Court of Appeals for the Ninth Circuit. Relying on Poe v. Seaborn, 282 U. S. 101, 51 S. Ct. 58, 75 L. Ed. 239, the United States Supreme Court permitted divided income tax returns for income received from community property in California.

Since the United States Supreme Court had previously, in United States v. Robbins, 269 U. S. 315, 46 S. Ct. 148, 70 L. Ed. 285, refused to allow California spouses to file separate tax returns each upon half the income from community property, the Malcolm case would seem to bear out the contention that the wife's interest in the community property has been enlarged by the enactment of section 161a.

The Malcolm case, however, was limited by Commissioner v. Harmon, 323 U. S. 44, 65 S. Ct. 103, 105, 89 L. Ed. 60: "* * * inspection of the briefs and of the report will show that the court's action was bottomed on a concession by the Government that 'with respect to the particular income here in question, the interests of the husband and wife were such as to bring the case within the rulings' in Poe v. Seaborn, and related cases 'because of amendments of the California statutes made since United States v. Robbins, 269 U. S. 315, 46 S. Ct. 148, 70 L. Ed. 285, was decided.'"

It is worthy of note that in Poe v. Seaborn, supra, upon which the Malcolm case was founded, the commissioner also conceded his case. "The Commissioner concedes that the answer to the question involved in the cause must be found in the provisions of the law of the State." In the cause at bar the state board of equalization has not given away its case in any such fashion. It vehemently insists that under the California law the wife's interest in California community property is not such a proprietary vested one as to permit her to escape inheritance tax thereon.

However the decisions of the California courts indicate that the wife's interests were not enlarged by the 1927 enactment of section 161a and she is in the same position as she was when Stewart v. Stewart, 204 Cal. 546, 269 Pac. 439, was decided.

In a note in 23 So. Cal. L. Rev. 237, 238, there is this comment on section 161a: "It is believed that the primary purpose of this addition to the Civil Code was to give the wife such an interest in the community property so as to allow the husband and wife to file separate income tax returns and thereby evade the higher income tax brackets. In United States v. Malcolm, the Supreme Court held that, by virtue of section 161a, California had given the wife a vested interest in community property and thus the Court upheld the separate returns filed by the husband and wife. But, in spite of this holding, it was soon discovered that the wife's interest was vested only so far as income tax purposes were concerned. For all other purposes, the wife's interest was not considered to be vested, but merely 'present, equal and existing' with that of the husband.''

The fact that the husband has complete control and management of the community property is a factor to be considered. The Federal government has used the test of control in a number of cases. Indeed, Poe v. Seaborn, supra, and the other cases permitting a divided return on community income seem to be an exception to the control test. However, community property jurisdictions other than California also permit the husband to control and manage the community property and still hold that the interest of the wife is vested. This on the theory that the husband is acting as agent of the community. The husband's control might be the basis of assessing the whole tax against his estate as was suggested by Justice Holmes in United States v. Robbins, supra, but the California courts have not followed that principle.

However, in United States v. Robbins, Justice Holmes also suggested that the fact that the whole of the community property fund was liable for payment of the husband's debts and none

of it liable for the wife's was a factor to be considered indicating that the husband was intended to bear the whole income tax.

In Re Cummings, D. C., 84 F. Supp. 65, a married woman had instituted divorce proceedings prior to her adjudication as a bankrupt. She was adjudged bankrupt January 15, 1947. She secured an interlocutory decree of divorce September 25, 1947, and the community property was divided. In December 1948 the trustee in bankruptcy petitioned the court to order the community property awarded by the interlocutory decree turned over to him for the benefit of the creditors. This petition was denied. The court relied on Grolemund v. Cafferata, 17 Cal. (2d) 679, 111 Pac. (2d) 641, 644, where the California District Court of Appeals said, "section 161a of the Civil Code does not change the nature of the wife's interest to a vested one so as to give her creditors the right of sequestration by attachment, execution or any other legal proceeding."

The California Supreme Court denied a hearing in the Grolemund case thus approving the decision. See also Smedberg v. Bevilockway, 14 Cal. App. (2d) 312, 58 Pac. (2d) 173, which arrived at the same conclusion without discussion of section 161a. Both the Smedberg and Grolemund cases held that the wife's interest in the community property could not be subjected to the satisfaction of a tort judgment.

Grace v. Carpenter, 42 Cal. App. (2d) 301, 108 Pac. (2d) 701, 702, was an action wherein a mother sought support from a married daughter under a California statute and secured a judgment for a monthly sum. The daughter was without separate property so that satisfaction of the judgment would have had to come from the income and earnings of the husband which were community property. The court said: "Moreover, the community property cannot be segregated and applied by an order or judgment of the court, as in this case, to hold the wife's interest in the community property in liquidation of her liability to support her mother." See also, McClain v. Tufts, 83 Cal. App. (2d) 140, 187 Pac. (2d) 818.

On the other hand, the entire community property is liable for the torts of the husband. Grolemund v. Cafferata, supra.

"An essential element of the right of private property is the right to use or dispose of it in any lawful way which does not infringe the rights of others." Thompson v. Lincoln Nat. Ins. Co., 114 Mont. 521, 138 Pac. (2d) 951, 957. "A person may not ordinarily have ownership of or right to enjoy property and at the same time be able to keep it from * * * creditors". In re Rosenberg's Will, 269 N. Y. 247, 199 N. E. 206, 207, 105 A. L. R. 1238.

William James Hunter was the record owner of the property in question at his death. "Generally speaking there is a presumption that the ownership of real estate is where the muniment of title places it." State Board of Equalization v. Fall, 121 Mont. 280, 287, 192 Pac. (2d) 532, 536. By the terms of the will of the decedent the property standing in his name passed to the respondent. Presumptively, therefore, this is a taxable transfer under the provisions of R. C. M. 1947, sec. 91-4401, subd. (1), and the respondent's title is by succession. Similarly in order to establish a resulting trust, it is necessary to prove by clear and convincing evidence that the money used to purchase the property which is the subject matter of the trust belonged to the beneficiary.

Ownership of property has been defined as a "bundle of privileges", Henneford v. Silas Mason Co., 300 U. S. 577, 582, 57 S. Ct. 524, 527, 81 L. Ed. 814, or a "conglomerate of jurisdiction and substantive legal rights." United States v. Gossler, D. C., 60 F. Supp. 971, 973.

By the various amendments to California's community property law, the wife's "bundle of privileges" has been enlarged. However, an examination of the decisions indicates that it is not yet that of ownership so that the wife has a vested title sufficient to overcome the presumption that title is where the record puts it and to bear the burden of proof necessary to impress a resulting trust. At most section 161a seems to be only another amendment giving a wife rights not possessed by an

heir. But these "rights were given her in order that she might protect herself against the fraudulent and inconsiderate acts of her husband, and thereby preserve the community property intact until the dissolution of the marriage." Stewart v. Stewart, 204 Cal. 546, 552, 269 Pac. 439, 441.

Nor does such a conclusion deprive the California resident of ▆▆ property rights. While the wife who takes as an heir must pay a tax on the entire estate when the Montana property stands in the name of the husband, yet the husband whose interests are augmented by the death of his wife, cf. Fernandez v. Wiener, 326 U. S. 340, 66 S. Ct. 178, 90 L. Ed. 116, does not pay a tax under section 91-4401.

Accordingly the estate passing to Thelma D. Hunter is taxable in whole and the order fixing inheritance tax thereon is set aside and the cause remanded for a determination of the tax due in accordance with this opinion.

MR. CHIEF JUSTICE ADAIR, and MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

I agree with the view that the result to be attained in this case depends upon the nature of the wife's interest in community property by the California law.

The California courts have not spoken directly on the meaning of their 1927 statute, section 161a, Civil Code, as it may affect inheritance taxes such as are involved here. I concede that were the statute ambiguous or of doubtful meaning the California courts, consistent with the mounting tendency, would probably resolve all such doubts against the taxpayer. But here the statute is so plain, definite and unambiguous that it is my belief the California courts will hold, if the question ever arises as here, that the statute means what it says, and that upon the death of a husband who has left all of his property to his wife, she will inherit his one-half interest in community property, but not the other one-half interest which was hers

before his death. I will venture the further guess that the California courts will, with remarkable agility, stress the fact that that conclusion is consistent with their prior holdings.

I think the district court's order was correct and should be affirmed.

MR. JUSTICE FREEBOURN: (dissenting).

I believe the judgment of the lower court should be affirmed.

Under the law and evidence the wife, prior to her husband's death, had a one-half interest in the Montana property because bought by the husband with community funds. Under section 161a, Civil Code of California, that interest was "present," "existing," and "equal."

The view now generally prevailing is that the wife has a vested interest equal in legal dignity to that of the husband in community property. See Vol. 8, Minn. L. Rev., p. 579 (Kirkwood), and authorities cited at the bottom of page 590.

At the same time the superior powers of management and control of the community property vested in the husband, by the California statutes, are held by him in a representative capacity only. See Poe v. Seaborn, 1930, 282 U. S. 101, 112-113, 51 S. Ct. 58, 75 L. Ed. 239, 244, and Vol. VII, So. Cal. L. Rev., p. 1, 16 (Kirkwood).

So that when the husband purchased the Montana property with community funds he acted as agent of and trustee for his wife as to her one-half interest in such property.

Rehearing denied Oct. 15, 1951.