## Richmond

Commonwealth of Virginia v. Henry A. Terjen.

January 16, 1956.

Record No. 4460.

Present, All the Justices.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General* and *C. F. Hicks, Assistant Attorney General,* for the Commonwealth.

*Willcox, Cooke & Willcox* and *Richard B. Spindle, III,* for the defendant in error.

Hudgins, C. J., delivered the opinion of the court.

Henry A. Terjen and his wife, Jean F. Terjen, while domiciled in and residents of the State of California, accumulated personal property of substantial value held by them under the law of California as community property. In 1950 they moved from California to Virginia bringing this property with them. In September of the same year $19,000.00 of this community property was used in the payment for a home in the City of Norfolk, title to which was taken in the name of Jean F. Terjen, the wife.

In March, 1953, Henry A. Terjen filed a tax return with the Department of Taxation of the Commonwealth of Virginia showing a gift from him to his wife in the amount of $9,500.00, one-half the purchase price of the home, and paid the correct amount of the gift tax thereon. Later the Department of Taxation assessed the petitioner an additional gift tax on the ground that the value of the gift was $19,000.00 and not $9,500.00. Thereafter Henry A. Terjen filed a petition under the provisions of Section 58-234 of the Code of Virginia praying that he be exonerated from paying the additional assessment. The trial court upheld his contention and entered judgment accordingly. The Department of Taxation, being of the opinion that the judgment was erroneous, filed a petition for rehearing, which was denied. This appeal granted the Commonwealth brings these judgments under review.

The only question presented is whether the husband as donor is chargeable with a gift tax (less personal exemptions) on $9,500.00, one-half of the purchase price of the home, or $19,000.00, the full purchase price.

The husband conceded in his petition filed in the lower court that the Virginia statutes (1950 Code Secs. 58-218, -219, -223) imposing a tax upon him as donor of a gift to his wife in excess of the value of $5,000.00 are valid and applicable to the agreed facts. His contention in the lower court (he made no appearance in this Court) was that the $19,000.00 (accumulated from his own earnings) was held as community property in California where his wife had a present vested interest in one-half, and that this one-half interest was not divested by the transfer of the property and domicile from California to Virginia.

■ The general rule is that "A change of domicil from a state where the community property law prevails to a common-law state does not affect the community character of property previously acquired. The law of the state to which the parties remove will reg-

ulate their future conduct and acquisitions, but the removal will not alter the rights of either to property then in possession, the title to which had vested under the community property law." 11 Am. Jur., Community Property, Sec. 16, p. 185; Ann. 92 A. L. R. 1352; Am. Law Inst., Restatement, Conflict of Laws, Sec. 292.

■ Whether the wife had a present vested interest in community property in California depends upon the California statutes as construed by the courts of that state.

In 1928 the Supreme Court of California held, in *Stewart* v. *Stewart*, 204 Cal. 546, 269 P. 439, that during the marriage the husband is the sole and exclusive owner of all community property and that the wife has no title thereto, nor interest, nor estate therein other than "a mere expectancy as heir if she survive him."

It seems that the rights of the parties in the foregoing case became fixed prior to the adoption of the 1927 amendment, Sec. 161a of the Civil Code of California. At least no reference was made to it in the opinion. This amendment provides: "The respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband as is provided in sections 172 and 172a of the Civil Code. This section shall be construed as defining the respective interests and rights of husband and wife in the community property."

The California courts in construing this section have held (1) that the statute defining the interest of spouses in community property did not change existing rules vesting in the husband the exclusive management and control of community property with absolute power of disposition other than a disposal without consideration, and (2) that all community property except the earnings of the wife were liable for the obligations of the husband, including liability for torts committed by him. *Grolemund* v. *Cafferata*, 17 Cal. (2d) 679, 111 P. (2d) 641; *Dandini* v. *Dandini*, 82 Cal. App. (2d) 263, 186 P. (2d) 41.

In *Bose* v. *Mills*, 101 Cal. App. (2d) 782, 226 P. (2) 5, it is said (226 P. (2d) 8): "There is no question, of course, that under the provisions of the Civil Code in respect to community property the husband has the exclusive management and control of community personal property, with like absolute power of disposition other than testamentary, as he has of his separate estate. Civil Code, § 172."

A wife may have a transfer of community property by the husband set aside if it is without consideration or fraudulently made, but even

if she is successful in such an action the property returns to the control of the husband. She cannot gain possession or control, enjoy or use the property during coverture. While the husband cannot convey the property without consideration, he may squander it, or invest it unwisely without violating the rights of the wife therein. *McClain* v. *Tufts*, 83 Cal. App. (2d) 140, 187 P. (2d) 818; *Stratton* v. *Superior Court*, 87 Cal. App. (2d) 809, 197 P. (2d) 821; *In Re Marinos' Estate*, 39 Cal. App. (2d) 1, 102 P. (2d) 443.

The question whether a wife domiciled and residing in California took or held a present vested right or interest in the community property was discussed at some length and many of the California decisions were reviewed by the Supreme Court of Montana in *In Re Hunter's Estate*, 125 Mont. 315, 236 P. (2d) 94. The facts were that William J. Hunter and his wife, Thelma D. Hunter, while residents of the State of California acquired valuable assets held as community property. The husband invested $156,000.00 of this property in two tracts of land, one thousand head of livestock and other personal property located in the State of Montana. His wife was not a party to the contracts of purchase or to the title papers. Hunter died devising and bequeathing all the property in Montana to his wife. She, as executrix of her husband's estate, claimed that the Montana property was purchased with funds acquired by her and her husband while residents of the State of California and was community property. The trial court upheld her contention and imposed an inheritance tax on only one-half of the value of the property. On review by the Supreme Court of Montana the contention of the surviving spouse was rejected and the judgment of the trial court reversed.

The executrix conceded that the law of the situs of the land (Montana) governs the incidence of an inheritance tax on the death of the owner, but she contended that by virtue of the law of California the money used by the husband to pay for the Montana property was community property, and that vested rights in property are not lost simply because the property is transported into another state and exchanged there for other property. Therefore, she said that since her property had been used for the purchase of the Montana land, a trust therein resulted. It was said in the opinion (236 P. (2d) 96 and 99):

"In determining what the state law of California is upon the question before us, we are endeavoring to define the nature of the interest a husband and wife have in California community property prior to

the dissolution of the marriage and then apply the Montana tax statutes to a transfer of that interest if applicable. In so doing we have no definitive decision of the highest court of California to guide us. Further we are compelled to analyze a system of ownership adopted largely from Spanish sources and foreign to our common law. For a discussion of the origin and extent of the community property system, see de Funiak, 'Principles of Community Property,' Vol. 1, and the article by Evans, The Ownership of Community Property, 35 Harv. L. Rev. 47. In applying our taxing law to the interest growing out of a different system of law in a different jurisdiction we must also preserve the integrity of our own system and protect our residents whose rights in both tax matters and ownership of property are fixed by Montana law. . . . At the same time we give protection to the property of California citizens just as they protect the rights and property of our citizens. *In re Thornton Estate*, 1 Cal. (2d) 1, 33 P. (2d) 1, 92 A. L. R. 1343; *Tomaier v. Tomaier, supra.*

\*　　\*　　\*　　\*　　\*　　\*　　\*

"Ownership of property has been defined as a 'bundle of privileges', *Henneford v. Silas Mason Co.*, 300 U. S. 577, 582, 57 S. Ct. 524, 527, 81 L. ed. 814, or a 'conglomerate of jurisdiction and substantive legal rights.' *United States v. Gossler*, D. C., 60 F. Supp. 971, 973.

"By the various amendments to California's community property law, the wife's 'bundle of privileges' has been enlarged. However, an examination of the decisions indicates that it is not yet that of ownership so that the wife has a vested title sufficient to overcome the presumption that title is where the record puts it and to bear the burden of proof necessary to impress a resulting trust. At most section 161a seems to be only another amendment giving a wife rights not possessed by an heir. But these 'rights were given her in order that she might protect herself against the fraudulent and inconsiderate acts of her husband, and thereby preserve the community property intact until the dissolution of the marriage.' "

The rights of the spouses during the continuance of the marriage relation in the $19,000.00 before the change of domicile from California to Virginia were that the husband was entitled to the exclusive possession, use, control, and disposal of it, except that he could not give or will it to a third party. It was subject to the payment of his debts, including his liability for torts. It was not subject to any obligations of the wife. Her only rights seems to have been the right

to have any transfer made by the husband without consideration set aside, and possession and control restored to him.

When the husband disposed of the $19,000.00 in question by payment for Virginia realty, title to which was taken in the name of the wife, he thereby transferred to her all the exclusive rights theretofore owned by him in the $19,000.00 converted from personal property to real estate. This real estate is held by the wife as her separate estate with the exclusive right to possession, use, enjoyment and disposal (subject to the husband's continued right of courtesy) of it under the laws of Virginia. The value of the wife's separate estate so acquired is not $9,500.00, but the whole purchase price used in payment of the real estate. It is upon the transfer of these rights in and to the $19,000.00 converted into realty that the Virginia statute, Sec. 58-218, imposes the gift tax.

The judgment of the trial court is reversed and final judgment entered for the Commonwealth in the sum of $140.00, plus penalty, interest and costs.

*Reversed and final judgment.*