Hover, J.
This matter is before this court on an appeal on questions of law by the Tax Commissioner, a motion to certify the record having been allowed, from the judgment of the Court of Appeals for Lucas County affirming the judgment of the Probate Court of such county overruling the exceptions of the Tax Commissioner to the determination of succession tax in the estate of Louis E. Kessler, deceased. Various exceptions were considered and disposed of in the proceedings in the lower court, and only one item excepted to is now before this court for determination.
Appellant claims that the full value of certain personal property acquired by the deceased and his wife while residents of the state of California is liable for taxation by the state of Ohio. The facts are comparatively simple and are not in dispute.
From 1947 until 1957, the decedent and his wife lived in the state of California. While there the husband acquired and had issued in his name certain shares of stock which, although slightly changed as to form and number of certificates, remained in his possession until his death in Ohio in 1961. Decedent and his wife, from 1957 until the date of death on January 20, 1961, lived in the state of Ohio. Decedent died testate. His executor, an appellee herein, both for inventory and tax purposes, determined that one-half of 28,700 shares of stock acquired while the couple was domiciled in California became, upon the husband’s death, the outright property of the widow under the law of the state of California relating to community *138 property. The courts below upheld this contention and determined that no tax was due as to her half of the above shares.
The concept of community property is a basic law of property in eight states. These states have in common an early inheritance of French or Spanish civil law as distinguished from the common law generally prevalent in the remainder of the states. Although the community-property states differ one from the other in various respects, the basic concept is the same, to wit, that property acquired during coverture, other than by gift or descent, is the joint property of husband and wife and is properly designated as “community property.” On the other hand, property held both in use and title for the exclusive benefit of either husband or wife is “separate property.” It is particularly in the state of California, the community-property state with which we are here concerned, that various community-property principles have been reduced to statute, apparently for the sake of clarity and certainty. There is no doubt that the property involved here became community property when it was acquired by Louis R. Kessler during the period of the family’s residence in California. The California Civil Code provides in regard to such property that “the respective interests of the husband and wife in community property during continuance of the marriage relation are present, existing and equal interests under the management and control of the husband.” Section 161a, California Civil Code.
It is generally recognized that the character of community property, even though it is personalty, does not change as to the. nature of the holding, where the married couple remove themselves from a community-property state to a common-law state. The converse is also true, that is, the character of property acquired in a common-law state is not altered merely by the removal of the couple to a community-property state. 15 American Jurisprudence (2d), 832, Community Property, Sections 15, 16 and 17; annotation, 171 A. L. R., 1343. See, also, Succession of Popp, 146 La., 464, 83 So., 765, citing Succession of Packwood, 9 Rob., 438, 41 Am. Dec., 341, the latter case apparently being the first of its kind since it arose shortly after the first of the community-property states, Louisiana, was admitted to the Union. People, ex rel., v. Bejarano (1961), 145 *139 Colo., 304, 358 P. (2d), 866; In re Will of Clark (1955), 59 N. M., 433, 285 P. (2d), 795. An attempt of the state of California by legislation to alter this general rule by creating a species of holding known as “quasi community property” was declared to be unconstitutional by the Supreme Court of California in In re Estate of Thornton, 1 Cal. (2d), 1, 33 P. (2d), 1, 92 A. L. R., 1343.
Therefore, one-half of the shares involved here remained the community property of the wife upon the removal of the couple from California to Ohio in 1957. In other words, her interest in the community property “vested” as of the date and place of acquisition and, as stated by the California statute, her interest in such property was present, existing and equal.
It is necessary, however, to consider the real nature of the interest acquired by the wife in order to determine its status in respect to the succession tax. This matter has been the subject of constant litigation in those states recognizing the community-property arrangement, and the interest has been extensively refined and considered in many respects, a few of which are here itemized: Insurance bought by the husband on his wife’s life with community funds becomes the husband’s separate property; the recovery for injuries to a person becomes community property in California but in other community-property states it is otherwise by statute; a recovery for wrongful death is not community property; community property may be used by the husband to benefit his separate property, and the wife would have at the most a lien for the original amount used; the husband has almost total management and control of the community property with power to dispose of it otherwise than by total gift; and the husband may pledge community property, may pay outlawed indebtedness, may dissipate or diminish the same through the exercise of bad judgment, and may deal in such property as if he were the owner thereof. It is subject to his separate debts and is also subject to fines and taxes levied against the husband. Community-property states differ as to whether community property is liable for the husband’s torts, but such property is nevertheless subject to liability for torts arising from the husband’s method of manage *140 menf. Community property is subject to community debts contracted by the husband.
This is but a brief listing of the many restrictions and limitations upon the wife’s ownership of such property during coverture.
Although it has been said, as pointed out in the arguments of counsel, that the wife’s interest in the community property is more than a mere expectancy, it is equally certain that the interest accorded her by the community-property law generally, and more specifically by the California statute, is certainly not in the nature of outright ownership until the dissolution of the marriage, as upon the death of the husband. The nature of the wife’s interest in community property is summarized in Willcox v. Penn. Mutual Life Ins. Co. (1947), 357 Pa., 581, 55 A. (2d), 521, 174 A. L. R., 220, wherein the Supreme Court of Pennsylvania found legislation attempting to establish the principle of community property in that state to be unconstitutional. The court observes:
“* * * it is obvious that an alleged interest in property over which another person has the right of control, management and disposal, which creditors of such other person can take in satisfaction of his debts, and as to which there is no practical means of protection, is not a genuine right of property no matter what name or alleged title of ownership may have been given it.”
It thus appears that, although one-half of the shares here in question became the outright property of the wife upon the death of the husband, the transition from community property to property of which the wife is the sole owner is a matter of real and substantial value which may become the basis for a succession tax.
In Fernandez, Collr., Internal Revenue, v. Wiener (1945), 326 U. S., 340, 90 L. Ed., 116, 66 S. Ct., 178, the Supreme Court discusses at length the ultimate and complete vesting of community property in one spouse upon death of the other as a taxable succession. Subparagraph (2) (b) of paragraph one of the syllabus is pertinent:
“Upon the termination of a Louisiana marital community by the death of either the husband or wife, there occurs, by *141 virtue of state law, a redistribution of powers and restrictions upon power with respect to tbe entire community property which affords an appropriate occasion for the levy of an excise tax measured by the value of the entire community property, although from the moment the community was established the respective rights of the spouses in the community were in every sense ‘vested,’ and it was certain that the changes in legal and economic relationships to property which occasion the tax would occur.”
The court states further on page 355:
“With these general principles in mind, we turn to their application to federal death taxes laid with respect to the interests in community property. As we have seen, the death of the husband of the Louisiana marital community not only operates to transfer his rights in his share of the community to his heirs or those taking under his will. It terminates his expansive and sometimes profitable control over the wife’s share, and for the first time brings her half of the property into her full and exclusive possession, control and enjoyment. The cessation of these extensive powers of the husband, even though they were powers over property which he never ‘owned,’ and the establishment in the wife of new powers of control over her share, though it was always hers, furnish appropriate occasions for the imposition of an excise tax.”
The determination that the wife’s acquisition of sole and complete ownership of one-half of the community property constitutes a taxable succession is further recognized and determined in In re Hunter’s Estate (1951), 125 Mont., 315, 236 P. (2d), 94. The taxable nature of the succession, even though it be a gift, is also recognized in Commonwealth v. Terjen (1956), 197 Va., 596, 90 S. E. (2d), 801.
It is further recognized in regard to a private premarital contract properly executed under the civil law of a foreign country in In re Estate of Walk (1948), 192 Misc., 237, 79 N. Y. Supp. (2d), 645.
The sole reported authority contra is People, ex rel., v. Bejarano, supra (145 Colo., 304), wherein the Supreme Court of Colorado determined that, under the peculiar circumstances of that case involving the contributions of a deceased husband *142 to a retirement fund, the acquisition of the fund by the wife under the theory that there was a succession by way of a gift or a grant effective upon death “did not, under the present statute, give rise to a taxable event.”
It therefore becomes necessary to examine whether this specific succession is one upon which a tax is levied by the Ohio statute.
The inheritance tax of Ohio has been determined repeatedly to be a succession tax, that is, a tax on the right to succeed to property or an interest therein and as such is grossly comparable to the taxes in the cases cited above concerning both the federal and state taxing laws. Somewhat analogous to the taxation of a succession such as this is the law of Ohio which imposes a tax upon one-half of the amount of a succession passing to husband or wife by virtue of a joint and survivor-ship contract owned by them, as determined in Bowers, Tax Commr., v. Evans, Exrx. (1962), 173 Ohio St., 137. The controlling point seems to be in all instances that the acquisition of the right to the full and complete enjoyment of property by virtue of the death of another creates a taxable succession to the property, where the enjoyment prior to death was something less than full and complete.
Since the whole concept of community property is unknown to the substantive law of Ohio, it is not to be expected that statutes levying taxes in this state would specifically contemplate any method of taxing this particular type of holding in so many words. Nevertheless, Ohio must recognize the property right involved, which property right provides a complete and total ownership of one-half of the community property 'in one spouse upon the death of the other. As already observed, it has been determined or admitted, wherever the question has arisen, that this transition from a partial and qualified ownership to total ownership is a taxable succession provided the statute of the particular taxing jurisdiction actually levies a tax.
Such a tax, if any, is levied by Section 5731.02, Revised Code, wherein it is provided that a tax is levied upon the succession to any property passing to or for the use of a person in certain categories, and it should be observed, of necessity, *143 in those categories only. Among such categories is subsection (E) of the section cited, which provides:
“Whenever property is held by two or more persons jointly, so that upon the death of one of them the survivor has a right to the immediate ownership or possession and enjoyment of the whole property, the accrual of such right by the death of one of them shall be deemed a succession taxable under this section, in the same manner as if the enhanced value of the whole property belonged absolutely to the deceased person, and he had bequeathed the same to the survivor by will provided when the persons holding said property jointly are a husband and wife, the survivor shall be deemed to have a succession taxable to the extent of one-half the total value of the property without regard to enhancement.”
The problem arises whether a party to a community-property relationship has a right to the immediate ownership or possession and enjoyment of the “whole property” upon the death of the other party to the joint ownership. If, in regard to community property, the “whole property” is the entirety of the community holding, obviously, subsection (E) does not apply because the survivor does not succeed to the entirety of the community property but to only one-half thereof. However, under the concept of community property each spouse has, during the life of the community, a qualified and restricted ownership in the whole which, upon the death of one of the parties, becomes an outright and total ownership of one-half; but, whether accrued or not, the one-half interest of the survivor in community property exists in one form or another at all times and, upon the death of one, vests “the right to the immediate ownership or possession and enjoyment of the whole property” in the survivor. It is by virtue of the death that the previously commingled and inseparable ownership of either of the parties in the whole property becomes complete and ascertainable as to one-half, so that when community property exists the survivor, upon death, does become entitled to the immediate ownership and possession and enjoyment of the whole of his share of the community property.
Subsection (E), with which we are here concerned, provides that, when the joint owners of such property as described *144 above are husband and wife, the survivor shall be deemed to have a taxable succession to the extent of one-half of the total value of the property without regard to enhancement.
The total value of the property here is the number of shares standing in the husband’s name upon death, multiplied by the then market value thereof. The taxable succession to the wife as the survivor of the community ownership is one-half of such total value.
In this case, by virtue of the death of Louis R. Kessler, his wife acquired the full and complete enjoyment of one-half of the shares of stock acquired as community property in California totally divested of the many restrictions and contingencies which had theretofore diluted her vested interest in that property. It is, accordingly, held that the acquisition by the widow, through the operation of the community-property law, of one-half of the 28,700 shares of stock in the name of her husband at his death constitutes a taxable succession under the succession tax law of Ohio.
Accordingly, the judgment of the Court of Appeals is, hereby, reversed, and the cause is remanded to the Probate Court for further proceedings in accordance with this opinion.

Judgment reversed.

Zimmerman, O’Neill and Griffith, JJ., concur.
Taft, C. J., Herbert and Gibson, JJ., dissent.
Hover, J., of the First Appellate District, sitting by designation in the place and stead of Matthias, J.